## PEOPLE *v.* MEARS.

1. EVIDENCE—WRITINGS˙ MAY BE IMPEACHED BY ORAL EVIDENCE OF FRAUD IN PROCUREMENT.

   Writings may be impeached by oral evidence of fraud in their procurement.

2. CRIMINAL LAW—FRAUD—WRITTEN CONTRACTS.

   Writings procured by fraud in order to cover a contemplated further fraud constitute no shield to perpetrator.

3. INDICTMENT AND INFORMATION—DUPLICITY.

   Where fact that information in one count charged two offenses was called to court's attention by motion to quash for duplicity, court should have ordered count made single by severance under Act No. 175, Pub. Acts 1927, chap. 7, § 75, or by striking out second charge as surplusage.

4. CRIMINAL LAW—EVIDENCE—FALSE PRETENSES—INTENT.

   In prosecution for obtaining signatures to note and mortgage by false pretenses, it was proper to show defendant's subsequent acts with reference to the instruments as bearing upon his intent in obtaining the signatures.

5. TRIAL—READING OTHER DECISIONS TO JURY.

   Decisions in other cases should never be read, as such, in giving instruction to jury, but applicable law as found therein may be incorporated in charge.

6. CRIMINAL LAW—TRIAL—INSTRUCTIONS.

   Reading by trial court from opinion of Supreme Court in another case as illustrative embellishment of argumentative instruction to jury was reversible error, especially where case read from was from same circuit, and instance mentioned and parties named must have been commonly known.

Error to Genesee; Parker (James S.), J.   Submitted April 25, 1930.   (Docket No. 139, Calendar No. 34,534.)   Decided October 3, 1930.

Edward P. Mears was convicted of obtaining signatures to a note and mortgage by false pretenses. Reversed.

*C. A. Withey,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Harold J. Waples,* Assistant Attorney General, for the people.

WIEST, C. J.   Defendant was engaged in the real estate business in the city of Flint, but not as a licensed broker, and brought about a deal whereby Joseph Bronson and Mary Bronson, husband and wife, owners of a farm, traded it for property in the city of Flint.   It is claimed that defendant, with intent to defraud and cheat the Bronsons, falsely pretended to them that there was an $800 mortgage upon the city property for them to assume and pay. There was no such mortgage, and it is further claimed that, by the false pretense mentioned and the further pretense that it was necessary to retire the fictitious mortgage, the defendant induced the Bronsons to execute a note for $800, secured by mortgage upon the city property, with payee and mortgagee blank, and then sold the note and mortgage to a third party, inserted that party's name, and pocketed the $800.   Defendant was arrested, charged with obtaining the signatures of the Bronsons to the note and mortgage by false pretenses with intent to defraud and cheat, and, upon trial by a jury, he was convicted.   His defense was that the Bronsons gave him a written purchase option on the farm, and when the exchange for the city property was brought about they agreed to give him a mortgage for $800 upon the city property for release of

the option. The option and the agreement to give the $800 mortgage upon the city property were in writing and signed by the Bronsons and introduced in evidence. The court permitted the Bronsons to testify that they relied upon defendant's representations and did not know the purport of the papers they signed. There is no merit in the point that the writings cannot be impeached by oral evidence of fraud in their procurement. See *Plate* v. *Detroit Fidelity & Surety Co.*, 229 Mich. 482, and cases there cited. If the mentioned writings were procured by fraud in order to cover a contemplated further fraud, they constitute no shield. It is contended that the information in one count charged two crimes. The single count in this information charges two offenses:

1. Obtaining signatures to a note and mortgage by false pretenses with intent to defraud and cheat.

2. Obtaining money from a third party on such note and mortgage.

The first offense was complete upon so obtaining the signatures. The second offense involved the first. Defendant was convicted of the first offense, and, inadvertently, sentenced for "obtaining money by false pretenses," which was the second offense. The record does not disclose the plea of defendant, but there was a motion to quash the information for duplicity. When so challenged, the court should have ordered the count made single. As the case must go back for a new trial, this may yet be done by severance, under Act No. 175, Pub. Acts 1927, chap. 7, § 75, or by striking out the second charge as surplusage. As bearing upon defendant's intent in obtaining the signatures, it was proper to show his subsequent acts with reference to the in-

struments. Act No. 175, Pub. Acts 1927, chapter 8, § 27.

In charging the jury, the circuit judge stated:

"A case somewhat similar in character to this was before the Supreme Court of this State and determined in the 244th Michigan on page 603, the *People* v. *Lintz,* and the Supreme Court said in that case, 'He,' referring to the complaining witness, 'testified that he relied on what he claimed the defendant told him, he paid a commission to Whitesell for the services rendered in making the exchange of the property. If he made the deal, relying on the representations of the defendant, that the farm was incumbered to the extent of $565, and executed the $1,000 mortgage for the purpose of retiring this mortgage, and thereby was induced and did pay the sum of $565 more for the farm than he believed he was required to pay to Franklin, and if the jury should so find, we are of the opinion that the charge in the information would be sustained.'

"In that case the mortgage was alleged to have been for $565 and the property was in the country; here the mortgage is for $800 on the property so acquired."

The instruction was argumentative, employed another case as an illustrative embellishment, and indulged a practice condemned by courts of review, and particularly prejudicial here because the case read was from the same circuit and the instance mentioned and parties named must have been commonly known. Decisions in other cases should never be read, as such, in giving instruction to a jury. The applicable law as found therein may be incorporated in a charge, but to go beyond that is not permissible. In *Lendberg* v. *Iron Mining Co.,* 75 Mich. 84, it was said:

"We think it was not proper for the court to read to the jury the full report of the case of *Swoboda* v.

*Ward,* 40 Mich. 420.　It is no more correct for the court than for counsel to read law reports to a jury. There are in all reports discussions which may include references to facts real or supposed, and law questions in or out of the record, which cannot be taken literally and just as they stand as guides to a jury in some other case, and with different facts.''

The same rule was applied in *People* v. *Holmes,* 111 Mich. 364.　We quote from the syllabus:

"It is error for the trial court to read to the jury an extract from an opinion rendered in the Supreme Court in a case differing in its facts from the case at issue; especially if the language quoted is argumentative.''

We quote the following from 14 R. C. L. p. 756:

"There are many things said by appellate courts that are sound law, but which, nevertheless, would be improper when adopted as instructions.　Therefore a trial court should not instruct a jury by reading to them an opinion given in another case.''

In *Notary* v. *United States,* 16 Fed. (2d) 434 (49 A. L. R. 1446), it was said:

"The practice has often been condemned of citing instances or decisions of courts in other cases to juries in connection with instructions.　It almost invariably leads, as in the present case, to an argumentative instruction.　While in this case the instruction may not have been prejudicial, we deem it proper to make pronouncement of our disapproval of the practice.''

Upon this subject, see, also, *Woodbury* v. *State,* 69 Ala. 242 (44 Am. Rep. 515); *Stewart* v. *Hunter,* 16 Ore. 62 (16 Pac. 876, 8 Am. St. Rep. 267); *Stedman* v. *O'Neil,* 82 Conn. 199 (72 Atl. 923, 22 L. R. A. [N. S.] 1229).

The conviction is reversed, a new trial ordered, and defendant remanded to the custody of the sheriff of Genesee county.

BUTZEL, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.