PEOPLE *v.* LYNDELL ROBINSON

1. False Pretenses—Check or Note—Indictment and Information—Proof.

    Steps in a false pretense transaction must be viewed as a continuum if they culminate in attainment of the objective of obtaining money by false pretenses and not as separate crimes or variances between the proof presented and the charge stated in the information (MCLA § 750.218).

2. Criminal Law—Attempt.

    It is the nature of attempt that the offense attempted is not completed (MCLA § 750.92).

3. False Pretenses—Attempt—Obtaining Check by False Pretenses—Indictment and Information—Proofs—Inferences.

    Information charging attempt to obtain money by false pretenses was proved where the people proved that defendant attempted to obtain a check payable to another, as the trier of fact could reasonably infer that if defendant had obtained the check he would have attempted to convert it into money; defendant's actions in going to a credit union, requesting the check and signing a receipt for it, had gone beyond mere preparation (MCLA §§ 750.92, 750.218).

4. False Pretenses—Attempt—Check.

    Defendant was properly charged with attempt to obtain money from a credit union by false pretenses where a check which defendant attempted to get from the credit union was drawn on the credit union's bank account and represented the credit

References for Points in Headnotes

[1] 32 Am Jur 2d, False Pretenses §§ 66, 68–71.
[2] 21 Am Jur 2d, Criminal Law §§ 110–113.
[3] 32 Am Jur 2d, False Pretenses §§ 41, 42, 66.
[4] 32 Am Jur 2d, False Pretenses §§ 54, 66.
[5] 32 Am Jur 2d, False Pretenses §§ 41, 42, 66, 70.

union's right to a sum of money which would have diminished had defendant succeeded in obtaining and cashing the check (MCLA §§ 750.92, 750.218).

5. FALSE PRETENSES—ATTEMPT—INSTRUCTIONS TO JURY—KNOWLEDGE—BANK COLLECTIONS—NEGOTIABLE INSTRUMENTS.

Trial of an information charging attempt to obtain money by false pretenses by getting a check from the victim does not require an inquiry concerning defendant's knowledge of, or instructions to the jury regarding, the law of bank collections and negotiable instruments nor is it of importance who would ultimately suffer the loss by the cashing of the check (MCLA §§ 750.92, 750.218).

Appeal from Recorder's Court of Detroit, Theodore R. Bohn, J., presiding. Submitted Division 1 December 12, 1969, at Detroit. (Docket No. 3,498.) Decided May 25, 1970.

Lyndell R. Robinson was convicted of attempting to obtain money by false pretenses. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Patricia J. Pernick,* Assistant Prosecuting Attorney, for the people.

*Philip A. Gillis,* for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

LEVIN, J. The defendant was convicted of attempting to obtain money by false pretenses[1] from a credit union. He appeals claiming (1) that the people proved only that he attempted to obtain a

---

[1] MCLA § 750.92 (Stat Ann 1962 Rev § 28.287); MCLA § 750.218 (Stat Ann 1962 Rev § 28.415).

check, not money, and (2) that even if he had suc-
ceeded in converting the check into money, the money
which he would have obtained would not have been
the credit union's money. We affirm.

The uncontroverted evidence established that some
person telephoned the credit union representing that
he was Alex Preston and requested that a check for
$306 be prepared and charged to Preston's account
with the credit union. The defendant later appeared
and represented that he was Preston and requested
the check. The cashier asked him to sign a receipt
for the check, which he did. Upon comparing sig-
natures she became suspicious and asked for addi-
tional identification. The defendant then left with-
out the check and was later apprehended.

The defendant contends that attempting to obtain
a *check*—the crime proved—is a crime separate and
distinct from the charged offense of attempting to
obtain *money* by false pretenses.[2] We are referred
to *People* v. *Mears* (1930), 251 Mich 359, 361. There
the defendant was charged in a single-count infor-
mation with both obtaining signatures to a note and
mortgage by false pretenses and with obtaining
money on the note and mortgage. The Court de-
clared that these were two separate offenses, and,
in reversing the conviction, said that the defendant
was convicted of the first offense but was "inad-
vertently" sentenced for the second, and that when
the defendant moved to quash the information for

_____

[2] The information charged that the defendant "feloniously at-
tempt[ed] to commit the crime of obtaining money under false
pretenses, and he, the said Lyndell R. Robinson, did then and there
do a certain overt act towards the commission thereof, to-wit:
presented identification of one Alex Preston and signed his name as
Alex Preston to a receipt for a check No. D032719 in the amount
of $306, property of Craftsman Credit Union, a nonprofit organiza-
tion, with intent to obtain $306 from the said Craftsman Credit
Union, but he, the said Lyndell R. Robinson, did then and there
fail in the perpetration thereof, or was intercepted and prevented
in the execution thereof."

duplicity the trial court should have ordered "the count made single".. The court also observed that the second offense "involved the first".

Here, in contrast with *Mears,* the information charged only one offense, namely, attempting to obtain money by false pretenses.[3] *Mears* cannot properly be read as precluding conviction of obtaining money by false pretenses because, as part of the scheme to obtain the money, the felon persuades the victim to sign a document (here a check) which the felon uses, or, as in this case, charging attempt, intends to use, to obtain the money.

In *People* v. *Luttermoser* (1900), 122 Mich 562, it was urged that an information was bad for duplicity in that it charged two offenses,—the one, obtaining signatures of certain persons to a written instrument by false pretenses, and the other, obtaining money on the basis of the instrument by false pretenses. The Court affirmed the conviction reasoning that obtaining the signatures was merely a step toward obtaining the money (p 565):

"Possibly the facts were set out in greater detail [in the information] than was absolutely necessary, but this was not a fault. The gist of the offense was the obtaining the money by the presentation of false or invalid orders. When this is stated, it answers the further objection that the information is bad for duplicity because in the same count several distinct, petty offenses are alleged, as these supposed distinct offenses consist of obtaining these several orders, but the averment as to obtaining the money is single."[4]

---

[3] The information in this case, in contrast with the *Mears* information, does not charge two separate offenses. Here the description in the information of what the defendant is alleged to have done concerns the overt act, which is simply an element of—the element that symbolizes—the one offense charged.

[4] See, also, *People* v. *Batten* (1967), 9 Mich App 195, 201.

In *People* v. *Hoffman* (1905), 142 Mich 531, the Court rejected the argument that an information charging a defendant with having obtained money from the state by false pretenses was not proved because before the defendant obtained the state's money he first had obtained, on the basis of false documents, a warrant drawn by the auditor general upon the state treasurer. It was the defendant's contention that he obtained the warrant, not money, on the strength of the false documents, and that when he later obtained the money the state treasurer relied on the auditor general's warrant, not the false documents, and the bank which paid the check relied on the check and nothing else. The Supreme Court reviewed other cases where it was attempted to fragment false pretense transactions and concluded that steps in such a transaction must be viewed as a continuum if they culminate in the attainment of the unlawful objective, obtaining money by false pretenses, not as separate crimes or variances between the proof and the charge stated in the information.[5]

It has, indeed, been held that there is a fatal variance between an indictment charging the obtaining of money by false pretenses and proof that the accused person obtained a check not money.[6] In

[5] The majority rule is that there is no fatal variance between allegations in an information that the defendant obtained "money" by false pretenses, and proof that he obtained a note or check which he negotiated or cashed thereby in fact obtaining money through the transaction. See Anno: Criminal charge predicated upon fraudulently obtaining a check, note, etc., or signature thereon, from the person executing the same, 141 ALR 210, 220.

[6] *State* v. *Pittman* (1967), 9 Ohio St 2d 186 (224 NE2d 913). Similarly, see *People* v. *Pickett* (1968), 15 Mich App 1; information charging the obtaining of money by false pretenses for services to be rendered over an indefinite and possibly prolonged period of time cannot be proved by showing that the accused person obtained a *job* by misrepresentation of his identity and criminal record. The Court observed that the information did not charge, and the people did not prove, that the accused person falsely represented the quality of the services that he could render.

the case before us, however, the defendant is charged with attempt, not the completed offense. It is the nature of attempt that the offense attempted is not completed.

The people proved that the defendant Robinson attempted to obtain a check. The trier of fact could reasonably infer that if he had obtained the check he would have attempted to convert it into money. And since the action of the defendant had gone beyond mere preparation (he presented himself at the credit union and requested, and signed a receipt for, the check) the trier could properly conclude that the charged offense, attempting to obtain money, was proved.

In other jurisdictions, it has been said that evidence that the accused attempted to obtain[7] or obtained[8] a check sufficiently supports a conviction of attempting to obtain money or property by false pretenses even though the check is not cashed.

The people also adequately established that the money that the defendant attempted to obtain was, as charged in the information, the property of the credit union. The credit union's account with the bank on which it drew the check it had prepared to the order of Alex Preston represented the credit union's right to a sum of money. That right would have been diminished if the defendant had succeeded in obtaining and cashing the check. This is sufficient; the fact that the drawee bank or some other bank or a prior endorser,[9] not the credit union, might

---

[7] *State* v. *Terry* (1891), 109 Mo 601, 622, 623.

[8] *Reeves* v. *State* (Okla App, 1939), 96 P2d 536.

[9] There was testimony at the trial that the credit union did not cash checks for its customers. Thus, if the defendant had obtained the check he might have converted it into cash with a bank, not necessarily the drawee bank, or a merchant or other person. Under the Uniform Commercial Code a collecting bank warrants that there are no forged endorsements. See MCLA § 440.4207(1) (a) (Stat Ann 1964 Rev § 19.4207[1] [a]). It appears, however, that delay in discovering the fraud might result in ultimate imposition of the

ultimately bear the loss does not affect the matter.[10]

Nor is it of any importance that the defendant could not have cared less whether the money he purloined was the credit union's money, the bank's or someone else's money, or who would ultimately suffer the loss.[11]

The trial of an information charging an attempt to obtain money by false pretenses does not require an inquiry concerning the defendant's knowledge of, or instructions to the jury regarding, the law of bank collections and negotiable instruments.

Affirmed.

All concurred.

---

loss on the credit union. Under MCLA § 440.4207(4) (Stat Ann 1964 Rev § 19.4207[4]) neglect in asserting a claim beyond a reasonable time after learning of a breach would discharge the collecting bank; also, the statute of limitations in an action by a customer against his own bank based on payment of an item bearing an unauthorized endorsement is only three years (MCLA § 440.4406 [4] [Stat Ann 1964 Rev § 19.4406(4)]) while a longer limitational period, the general six-year statute (MCLA § 600.5807 [8] [Stat Ann 1962 Rev § 27A.5807(8)]), might apply in an action against the credit union by one of its customers.

10 In a number of cases it has been held that an accused person may be convicted of obtaining money or property by false pretenses even though the victim might not suffer any loss. See *State* v. *Porter* (1881), 75 Mo 171, 177; *People* v. *Cook* (1886), 41 Hun 67 (5 NY Crim 115); *People* v. *Bryant* (1898), 119 Cal 595 (51 P 960); *State* v. *Aiken* (1953), 174 Kan 162 (254 P2d 264).

It has also been held that when the offense charged is the obtaining of a signature on a written instrument by false pretenses that it is sufficient that the victim has been exposed to the hazards attendant upon having the instrument come into the possession of other persons. See annotation cited in fn 5, at p 235.

11 See *People* v. *Hoffmann, supra.*