# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
November 29, 2018

v

RANDY JAY GRIFFIN,

      Defendant-Appellant.

No. 339248
St. Clair Circuit Court
LC No. 17-000144-FH

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of two counts of attempted second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age); MCL 750.92.[1] The trial court sentenced defendant as a third habitual offender, MCL 769.11, to 4 to 10 years' imprisonment for each of his convictions of attempted CSC-II and to lifetime electronic monitoring. For the reasons set forth in this opinion, we affirm defendant's convictions and affirm in part and vacate in part defendant's sentence.

## I. BACKGROUND

This case arises from allegations made by a minor that during the summer of 2009, the victim and her younger brothers spent a lot of time with their "aunts and uncles," primarily Anita Sawdon and defendant, because the victim's mother "got addicted to drugs." At that time, the victim was 10 years old and defendant was 41.

At trial, the victim testified that defendant would put his hand on her inner thigh near the crease of her leg and that defendant's hand touched "the side of [her] girl's business." The victim alleged this conduct occurred while she and defendant watched television. Also, the victim testified that defendant would lie in bed with her and would touch her back, chest and thighs. There was additional testimony from the victim that defendant touched her on her breasts, around her breasts, and would rub the lining of her underwear. Sawdon testified that she

---

[1] Defendant was also charged with two counts of CSC-II under MCL 750.520c(1)(a). However, the jury ultimately acquitted defendant of the CSC-II counts.

observed defendant and the victim together often, and at times, they would be wrestling on the bed, sometimes with defendant in his underwear.

At trial, defendant denied any contact with the victim that was of a sexual nature. He specifically denied ever touching the victim on her chest, buttocks, or back. Defendant testified that he was informed by police that he was being investigated for a possible charge of criminal sexual conduct. Defendant moved to Florida shortly after the conversation he had with police relative to that potential charge. Defendant testified that his sole motivation for moving to Florida was so he could find a job. A warrant was issued for defendant in 2010 and he was extradited to Michigan in 2016. Defendant claimed he had no knowledge there was a warrant for his arrest while he was residing in Florida.

Over the objection of defendant, M Crim JI 4.4 pertaining to flight was read to the jury. Ultimately, the jury found defendant guilty of two counts of attempted CSC-II and acquitted defendant of two counts of CSC-II. Defendant was sentenced as indicated above and this appeal then ensued.

## II. INSUFFICIENT EVIDENCE

On appeal, defendant first contends that the prosecution presented insufficient evidence during trial to support his convictions. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009), citing *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). The evidence must be viewed "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012), citing *People v Petrella*, 424 Mich 221, 268-269; 380 NW2d 11 (1985). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), citing *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *Kanaan*, 278 Mich App at 594.

"The elements of CSC–II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). The statutory definition of "sexual contact" includes " 'the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for

a sexual purpose . . . .' " *Duenaz*, 306 Mich App at 106-107, quoting MCL 750.520a(q) (alteration in original). Under MCL 750.520a(f), " 'intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." "[W]hen determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be 'viewed objectively' under a 'reasonable person' standard." *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016), quoting *People v Piper*, 223 Mich App 642, 647, 650; 567 NW2d 483 (1997) (quotation marks omitted).

As explained by the Michigan Supreme Court, under MCL 750.92, "an 'attempt' consists of (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001). The Michigan Supreme Court has "further explained the elements of attempt under our statute as including 'an intent to do an act or to bring about certain consequences which would in law amount to a crime; and . . . an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation.' " *Id.*, quoting *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993) (citation omitted). "It is the nature of attempt that the offense attempted is not completed." *People v Robinson*, 23 Mich App 672, 677; 179 NW2d 239 (1970).

Relative to defendant's assertions that the prosecution failed to present sufficient evidence to support his two convictions of attempted CSC-II, we note that review of the record reveals that the victim testified that defendant touched her numerous times on her back, chest, and thighs while she was lying on defendant's bed. The victim also testified that defendant ran his fingers "underneath" the "lining" of her "training bra." According to the victim, defendant also touched her thigh and buttocks, he would "rub the lining of [her] underwear," and he would stick part of his fingers underneath the lining of her underwear and "just rub." Additionally, the victim testified that defendant touched her on multiple occasions after he instructed her to sit with her legs crossed on the couch. According to the victim's testimony, during those incidents defendant would "stick his hand on [her] inner thigh close to where the crease of [her] leg [was]" as they watched "TV or [ate] ribbon candy." Defendant would "just hold [her] thigh." However, the side of defendant's hand and his pinky finger "touched the side of [her] girl's business."

As to defendant's assertion that the prosecution only introduced evidence that defendant touched the areas "near" the victim's genitals, we note the record demonstrates evidence which directly refutes defendant's assertions. Here, the record evidence presented by the victim was that defendant touched the bottom of her breast, her inner thigh near the crease of her leg and her genital area. As discussed above, MCL 750.520a(f) provides that "intimate parts" include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." Accordingly, the victim's testimony, if believed, as to where defendant touched her, provided the trier of fact with legally sufficient evidence on which to convict defendant of attempted CSC-II.

Defendant additionally argues that the prosecution failed to present any evidence that defendant touched the victim intentionally or that he did so for a sexual purpose. On these issues, case law dictates that minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *Kanaan*, 278 Mich App at 594. During trial, the victim explained that defendant touched her on multiple occasions, both while she was sitting on the couch and while she was lying on his bed. Further, defendant instructed the victim to sit with her legs crossed while she was sitting on the couch, and defendant would tell the victim to "come here" to defendant's bed

before he began touching her while she was lying down in his bed. That testimony, taken alongside the victim's testimony regarding the places and the ways in which defendant touched her, provided a basis from which a rational trier of fact could conclude that defendant attempted to intentionally touch the victim for a sexual purpose. Therefore, defendant is not entitled to relief on the basis that insufficient evidence was presented to the jury.

## III. JURY INSTRUCTIONS

Next, defendant asserts that the trial court abused its discretion when it instructed the jury according to M Crim JI 4.4 (Flight, Concealment, Escape or Attempted Escape) because there was no evidence presented during trial that defendant moved from Michigan to Florida to avoid prosecution.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014), citing *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). An abuse of discretion occurs "when the trial court chooses an outcome falling outside" the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) (citations omitted).

"The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010), citing *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999). A miscarriage of justice occurs when "it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

When reviewing jury instructions for error requiring reversal, this Court considers "the instructions as a whole." *People v Richardson*, 490 Mich 115, 119; 803 NW2d 302 (2011), citing *People v Kelly*, 423 Mich 261, 270-272; 378 NW2d 365 (1985). "Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998) (citations omitted). " 'A criminal defendant is entitled to have a properly instructed jury consider the evidence against him.' " *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014), quoting *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Armstrong*, 305 Mich App at 240 (citation and quotation marks omitted). "The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*.

Defendant argues that the trial court abused its discretion when it based a jury instruction on M Crim JI 4.4 because there was no evidence that defendant fled Michigan to avoid prosecution.

During trial, the trial court included the following instruction based on M Crim JI 4.4:

There has been some evidence that the defendant ran after he was accused of the crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear. However, a person may also run or hide

because of a consciousness of guilt. You must decide whether the evidence is true, and if true whether it shows that the defendant had a guilty state of mind.

Sergeant Matthew Paul Stringer of the St. Clair County Sheriff's Department, testified during trial that after the victim underwent a forensic interview in April 2010, Stringer attempted to contact defendant by calling his telephone number with no response. Subsequently, Stringer "received a package in the mail," which contained "a packet of information and [Sergeant Stringer] was advised to contact [defendant's] attorney[.]"

At some point in April 2010, Stringer did end up speaking with defendant "[o]ver the phone" and told defendant he was "investigating a criminal sexual conduct investigation [sic] against [defendant] and another individual." Defendant "asked who that person was," and Stringer told defendant that he "did not feel comfortable talking to him any further over the phone . . . ." Stringer asked defendant to "come down to the Sheriff's Department for an interview," and defendant replied that he would not attend an interview without an attorney. According to Stringer, defendant never came to the St. Clair County Sheriff's Department for an interview.

During trial, defendant testified that he moved from Michigan to Florida in March 2010 due to his inability to find work in Michigan, and that he first learned of the allegations against him at "the end of March" or the "beginning of April" when "the police showed up at [his] door" at his home in Florida. However, defendant clarified that, while he was still in Michigan in early March 2010, he provided a folder of paperwork to a "detective" who arrived at defendant's home after the "detective" told defendant that he "needed to come down" to talk about "a case." Additionally, defendant admitted that he "might be off" regarding "some of [the] dates" mentioned in his testimony "by a week or so."

Notably, Sawdon testified that during her relationship with defendant, they had previously moved from Michigan to Florida in 2005 when defendant "fled the police." Sawdon explained that defendant "lied to [her] and said he had a job down there [i.e., in Florida,] instead of telling [Sawdon] he had warrants." According to Sawdon, they moved back to Michigan in 2008. In addition, the record reveals that defendant's own testimony indicated that he had some contact with a "detective" before he moved from Michigan to Florida. Moreover, defendant admitted that it was possible his recollection of the dates provided in his testimony could have been inaccurate. Thus, even though defendant provided an innocent explanation for his move to Florida, the timing of defendant's move when viewed in conjunction with Stringer's attempts to contact defendant, defendant's contact with a "detective" outside of his home in Michigan, defendant's equivocation about the accuracy of the dates he provided in his testimony, and his previous move from Michigan to Florida in order to evade the police all provided evidence that supported the giving of a jury instruction based on M Crim JI 4.4. Finding that the trial court had a factual basis to give the objected to instruction, we are precluded from finding that the trial court abused its discretion by giving the instruction M Crim JI 4.4. Consequently, defendant is not entitled to relief on this issue.

IV. LIFETIME MONITORING

Next, defendant contends that the trial court erred when it sentenced him to lifetime electronic monitoring based on his convictions of attempted CSC-II. An issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), citing *Hines v Volkswagen of America*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Defendant did not object to the imposition of lifetime electronic monitoring during sentencing. Therefore, this issue is unpreserved for appellate review.

Generally, this Court reviews questions of statutory interpretation de novo. *People v Konopka*, 309 Mich App 345, 356; 869 NW2d 651 (2015) (citation omitted). However, because defendant's claim is not preserved, defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights to avoid forfeiture under the plain error rule. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), citing *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015), citing *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted; alteration in original).

" '[T]he primary goal of statutory construction is to give effect to the Legislature's intent.' " *People v Kern*, 288 Mich App 513, 516; 794 NW2d 362 (2010), quoting *People v Osantowski*, 481 Mich 103, 107; 748 NW2d 799 (2008) (alteration in original). " 'The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute.' " *Kern*, 288 Mich App at 516; quoting *People v Lowe*, 484 Mich 718, 721-722; 773 NW2d 1 (2009). "An unambiguous statute is enforced as written." *Kern*, 288 Mich App at 516, citing *People v Holder*, 483 Mich 168, 172; 767 NW2d 423 (2009). "In general, '[s]tatutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole.' " *Kern*, 288 Mich App at 517, quoting *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007).

In the context of CSC-II, MCL 750.520c(2)(b) provides: "In addition to the penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic monitoring under section 520n if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age." Relatedly, MCL 750.520n(1) provides in relevant part: "A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring . . . ." MCL 750.520b pertains to first-degree criminal sexual conduct (CSC-I).

However, "[a]ttempt is an inchoate offense, the punishment for which is provided in MCL 750.92." *People v Johnson*, 195 Mich App 571, 573; 491 NW2d 622 (1992). Moreover, "attempt is a separate, substantive offense punishable under its own statute." *Id*. at 575. MCL 750.92 provides a punishment for attempt offenses "when no express provision is made by law

for the punishment of such attempt[.]"  MCL 750.520c is silent regarding punishments for attempted CSC-II.

By its plain language, MCL 750.520n only pertains to convictions of CSC-I and CSC-II, and MCL 750.520n is silent regarding convictions of attempted CSC-I or CSC-II.  As there is no language in MCL 750.92 pertaining to lifetime electronic monitoring, the trial court erred when it sentenced defendant to lifetime electronic monitoring.[2]  This error is plain, and the error affected defendant's substantial right to a valid sentence.  As the imposition of an invalid sentence affects the fairness, integrity, or the public reputation of judicial proceedings, we vacate the portion of defendant's judgment of sentence pertaining to lifetime electronic monitoring.

Defendant's convictions are affirmed, his sentences affirmed in part and vacated in part, and the matter remanded to the trial court for the entry of an amended judgment of sentence consistent with this opinion.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

---

[2] In their appeal brief, the prosecution correctly concedes the error made by the trial court.