### PEOPLE v THOUSAND

Docket No. 220283. Submitted April 4, 2000, at Detroit. Decided May 12, 2000, at 9:05 A.M. Leave to appeal granted, 463 Mich 906.

Christopher Thousand was charged in the Wayne Circuit Court with child sexually abusive activity, solicitation to commit third-degree criminal sexual conduct, and attempted distribution of obscene material to a minor. The defendant had engaged in a chat on the Internet with "Bekka," a person whom the defendant thought was a fourteen-year-old girl but was in fact an adult male sheriff's deputy. During the online chat, the defendant had made sexual comments to "Bekka," sent "Bekka" a picture of his penis, and told "Bekka" that he would engage in sexual activity with "Bekka" after they meet. The court, Deborah A. Thomas, J., quashed the information and dismissed the case, ruling that each of the charged offenses required the involvement of a minor and that it was legally impossible for the defendant to have committed or to have attempted to commit the charged offenses because no minor was involved. The prosecution appealed.

The Court of Appeals *held*:

1. Legal impossibility exists if the actor's goal is illegal, but commission of the offense is impossible because of a factual mistake by the actor regarding the legal status of some attendant circumstance relevant to the actor's conduct.

2. The trial court properly dismissed the charge of solicitation to commit third-degree criminal sexual conduct (sexual penetration with a person under the age of sixteen). While the defendant desired to engage in sexual activity with a fourteen-year-old girl, the actual object of his desire was an adult male. If the defendant had actually engaged in sexual penetration with the person to whom he made the offer, he would not have committed third-degree criminal sexual conduct. The defendant did not solicit another person to commit a crime because neither a real fourteen-year-old girl nor the deputy would have been guilty of third-degree criminal sexual conduct had either one engaged in sexual intercourse with the defendant.

3. The trial court properly dismissed the charge of attempted dissemination or exhibition of sexual material to a minor. The statute

that prohibits dissemination or exhibition of sexual material to a minor requires that the recipient be under eighteen years of age. While the defendant believed that he was sending a picture of his penis to a fourteen-year-old girl, he in fact sent it to an adult male and thus did not violate the statute.

4. The trial court erred in dismissing the charge of child sexually abusive activity. The statute that governs such activity makes a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity guilty of a felony. Because the statute makes mere preparation for child sexually abusive activity a crime, it applies to the defendant, who is alleged to have made preparations to engage in child sexually abusive activity with someone he thought was a child, regardless of whether he actually could have succeeded in engaging in child sexually abusive activity.

Affirmed in part, reversed in part, and remanded for reinstatement of the child sexually abusive activity charge.

1. CRIMINAL LAW — DEFENSES — LEGAL IMPOSSIBILITY — FACTUAL IMPOSSIBILITY.
Legal impossibility is a defense to a criminal charge, but factual impossibility is not.

2. CRIMINAL LAW — FACTUAL IMPOSSIBILITY.
Factual impossibility exists when a person's intended end constitutes a crime, but the person fails to consummate the offense because of an attendant circumstance unknown to the person or beyond the person's control.

3. CRIMINAL LAW — LEGAL IMPOSSIBILITY.
Legal impossibility exists if an actor's goal is illegal, but commission of the offense is impossible because of a factual mistake by the actor regarding the legal status of some attendant circumstance relevant to the actor's conduct.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Brian T. Moody*, Assistant Prosecuting Attorney, for the people.

*David E. Fregolle*, for the defendant.

Before: CAVANAGH, P.J., and SAWYER and ZAHRA, JJ.

SAWYER, J. Defendant was charged with child sexually abusive activity, MCL 750.145c; MSA 28.342a, solicitation to commit third-degree criminal sexual conduct, MCL 750.157b(3)(a); MSA 28.354(2)(3)(a) and MCL 750.520d(1)(a); MSA 28.788(4)(1)(a), and attempted distribution of obscene material to a minor, MCL 750.92; MSA 28.287 and MCL 722.675; MSA 25.254(5). The trial court granted defendant's motion to quash and dismissed the case. The people now appeal, and we affirm in part, reverse in part, and remand.

In December 1998, during an undercover investigation of persons using the Internet to attempt to engage in child sexually abusive activity, Wayne County Sheriff's Deputy William Liczbinski, an adult, entered Internet chat rooms and posed as a minor. While in a chat room, Deputy Liczbinski, posing as a fourteen-year-old girl named "Bekka," began chatting with defendant. During their correspondence, defendant made sexual comments to "Bekka" and sent "her" a picture of his penis via the Internet. Defendant told "Bekka" that he was going to "take [her] back to his home into his bedroom where we can be alone and not be bothered for sexual activity." Defendant and "Bekka" decided to meet at the McDonald's Restaurant located on Van Dyke in the city of Detroit. Defendant told "Bekka" that he would be driving a green Duster, what clothing he would be wearing for the meeting, and that he would be carrying a gift for her, a white teddy bear. When he arrived at the meeting site at the predetermined time, defendant was arrested by sheriff's deputies. Two white teddy bears were found in defendant's automobile.

Defendant moved to quash the information and dismiss the case, arguing that each of the charged offenses required the existence of a minor as the victim or potential victim and that it was undisputed that no minor was actually involved in this matter. The trial court agreed with defendant and granted the motion to quash. The trial court reasoned that the existence of a minor was an element of each offense with which defendant was charged and, because no such minor was involved, it was legally impossible for defendant to have committed or have attempted to commit the charged offenses.

The prosecution's only argument involves whether it is legally or factually impossible for defendant to have committed the charged offenses where the victim was not, in fact, a fourteen-year-old girl as defendant thought, but in fact an adult male. This distinction is critical because, while legal impossibility is a defense to the crime of attempt, factual impossibility is not. *People v Ng*, 156 Mich App 779, 786; 402 NW2d 500 (1986); see also *People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975); *People v Cain*, 238 Mich App 95, 117-118; 605 NW2d 28 (1999). Although this is the only issue raised by the prosecution, we believe that the analysis differs with each of the three charged offenses. Accordingly, we will analyze each offense separately.

To begin, the issue of factual versus legal impossibility presents a question like the ancient quandary of whether a glass is half empty or half full. As Professor Joshua Dressler states in Understanding Criminal Law, § 27.07[D][3][a], pp 374-375 (2d ed), the distinction can be very subtle:

> *Ultimately any case of hybrid legal impossibility may reasonably be characterized as factual impossibility.* That is, applying the definition of "factual impossibility" set out above in subsection [C][1], in each case *D*'s intended end (e.g., to receive stolen property; to pick a human pocket; to bribe a juror; to kill a human; to hunt a deer out of season) constituted a crime, but she failed to consummate the offense because of some fact of which *D* was unaware or was beyond her control. Thus, by skillful characterization, one can describe virtually any case of hybrid legal impossibility, which is a common law defense, as an example of factual impossibility, which is *not* a defense. [Emphasis in original.]

Professor Dressler summarizes factual impossibility, *id.* at § 27.07[C][1], p 370, as follows:

> "Factual impossibility" exists when a person's intended end constitutes a crime, but she fails to consummate the offense because of an attendant circumstance unknown to her or beyond her control. Examples of factual impossibility are: (1) a pickpocket putting her hand in the victim's empty pocket; (2) an abortionist beginning the surgical procedure on a nonpregnant woman; (3) an impotent male trying to have nonconsensual sexual intercourse; (4) an assailant shooting into an empty bed where the intended victim customarily sleeps, or pulling the trigger of an unloaded gun aimed at a person who is present.
>
> In each of these examples the actor was mistaken regarding some fact relating to the victim, herself or himself, and/or the method of commission. More specifically, the target offense was not consummated because the actor chose the wrong victim (the pickpocket and abortion cases), the victim was not present (the empty bed case), the actor was not physically capable of committing the offense (the impotency case), or inappropriate means were used to commit the crime (the unloaded gun case). Had the circumstances been as the actors believed them to be, or hoped that they were (e.g., the pocket contained property; the woman was pregnant; the victim was in the bed; the actor

was physically capable of having intercourse; the gun was loaded), the crimes would have been consummated.

It should not be surprising that lawmakers are unsympathetic to claims of factual impossibility. In each of the cases described above, the actor has demonstrated her or his dangerousness (critical to subjectivists) and manifested criminality (important to objectivists). No good reason exists to recognize a defense merely because a person chooses her victim badly, does not use proper means to commit the crime, or for some other reason unrelated to her culpability does not successfully commit the offense.

Dressler summarizes legal impossibility as follows, *id.* at § 27.07[D][3][a], pp 373-374:

> Hybrid legal impossibility (or what courts will simply call "legal impossibility") exists if the actor's goal is illegal (thus, distinguishing itself from pure legal impossibility), but commission of the offense is impossible due to a *factual* mistake by her regarding the *legal* status of some attendant circumstance relevant to her conduct. As the preceding definition implies and as is clarified immediately below, this is a hybrid version of impossibility: the actor's impossibility claim includes both legal and factual aspects to it.
>
> Courts have recognized a defense of legal impossibility or have stated that it would exist if *D*: (1) receives *un*stolen property believing that it was stolen; (2) tries to pick the pocket of a stone image of a human; (3) offers a bribe to a "juror" who is not a juror; (4) tries to hunt deer out of season by shooting a stuffed animal; (5) shoots a corpse believing that it is alive; or (6) shoots at a tree stump believing that it is a human.
>
> Notice that each of the mistakes in these cases affected the legal status of some aspect of the defendant's conduct. A person is not guilty of "receiving stolen property with knowledge that it is stolen" unless the property is "stolen" in character. Likewise, one cannot legally bribe a juror unless the person bribed is a juror. The status of a victim as a "human being," rather than as a corpse, tree stump, or statue, legally is necessary to commit the crime of murder

or to "take and carry away the personal property *of another*." Finally, putting a bullet into a stuffed deer cannot legally constitute the crime of killing a deer out of season.

On the other hand, in each of the preceding examples of hybrid legal impossibility, *D* was mistaken about a fact: whether the property had been stolen; whether a person was a juror; whether the victims were living human beings; or whether the victim was an animal subject to being hunted out of season. [Emphasis in original.]

This brings us back to the original point from Professor Dressler that we quoted: cases may be reasonably characterized as either factually or legally impossible. One distinction we do note between Dressler's examples of legal and factual impossibility is this: in the legal impossibility cases, the intended object of the defendant's actus reus could *not* possibly support the crime, while in the factual impossibility cases the object of the actus reus *could* have been the victim of a crime.

Taking the examples of legal impossibility, the property the defendant intended to receive was not, in fact, stolen and therefore could not form the basis of receiving stolen property; the intended victim of the pickpocket was, in fact, a stone statue, which cannot be the victim of a theft; the person the defendant intended to give money to was not a juror, and therefore could not be a bribed juror; the defendant intended, in fact, to shoot the object that turned out to be a stuffed deer and a stuffed deer cannot be taken out of season; the defendant intended to shoot the object that was, in fact, a corpse or the object that was, in fact, a tree stump and neither a corpse nor a tree stump may be the victim of a homicide. In each of these cases, the defendant accomplished the actual act he set out to do. He received the property

he intended to receive, he picked the pocket he intended to pick, he gave money to the person to whom he intended to give the money, and he shot the object he intended to shoot. While upon learning the full facts of the situation, the defendant may be disappointed in the results, he nevertheless committed the act he intended to commit.

Turning to the examples of factual impossibility, if the victim's pocket had had a wallet, the victim would have suffered a theft; if the woman were pregnant, there would have been an abortion; if the defendant had not been impotent, the victim would have been raped; if the victim had been in the location where the defendant shot, or if the gun had been loaded, the victim would have suffered the wound. In each of these cases, the defendant did *not* accomplish the intended task. He did not remove anything from the victim's pocket, he did not abort the fetus, he failed to have intercourse with the victim, and failed to shoot the victim.

Turning then to the case at bar, we believe that defendant's conduct with respect to two of the charges represents legal impossibility and, therefore, the trial court properly dismissed the charges. However, with respect to one of the charges, we believe the trial court improperly dismissed the charge.

First, we consider the offense of solicitation of criminal sexual conduct in the third degree. MCL 750.157b(3)(a); MSA 28.354(2)(3)(a) and MCL 750.520d(1)(a); MSA 28.788(4)(1)(a). The form of criminal sexual conduct in the third degree (CSC-3) charged is engaging in sexual penetration with a per-

son under the age of sixteen.[1] We believe that this represents a case of legal impossibility from both the solicitation aspect and the CSC-3 aspect. First, with respect to the CSC-3 element, MCL 750.520d(1)(a); MSA 28.788(4)(1)(a) requires that the defendant engage in sexual penetration with a victim who is at least thirteen years of age and under sixteen. While defendant desired to engage in sexual activity with a fourteen-year-old girl, the actual object of his desire was an adult male, Deputy Liczbinski. The person to whom defendant actually made the offer of sexual relations was over the age of sixteen. If defendant had actually engaged in sexual penetration with the person to whom he made the offer (Deputy Liczbinski), he would not have violated MCL 750.520d(1)(a); MSA 28.788(4)(1)(a). It is similar to the poaching the stuffed deer case. Just as it is not poaching to shoot a stuffed deer, it is not a violation of MCL 750.520d(1)(a); MSA 28.788(4)(1)(a) to engage in consensual sexual intercourse with an adult.

Turning to the issue of solicitation, MCL 750.157b; MSA 28.354(2) provides in pertinent part as follows:

> (1) For purposes of this section, "solicit" means to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation.
>
> *     *     *
>
> (3) Except as provided in subsection (2), a person who solicits another person to commit a felony, or who solicits

---

[1] The prosecution argued below that the existence of a minor was not an essential element to this count. While it is true that, in general terms, the victim of CSC-3 need not be a minor, a minor victim is essential to specific provisions of the CSC-3 statute alleged in this case.

another person to do or omit to do an act which if com-
pleted would constitute a felony, is punishable as follows
. . . .

What is lacking here is defendant's request to another
person to commit a crime. "Bekka," the fourteen-year-
old female online persona of Deputy Liczbinski, was
not asked to commit a crime. That is, while it would
be a crime for defendant to engage in sexual inter-
course with a fourteen-year-old girl, a fourteen-year-
old girl is not committing a criminal offense (or at
least not CSC-3) by engaging in sexual intercourse with
an adult. Thus, whether we look at this case as
defendant asking fourteen-year-old "Bekka" to engage
in sexual intercourse with him or as defendant asking
Deputy Liczbinski to engage in sexual intercourse
with him, he did not ask another person to commit
CSC-3. That is, it is legally impossible for a person to
violate MCL 750.520d(1)(a); MSA 28.788(4)(1)(a) by
engaging in sexual intercourse with defendant.

For the above reasons, we conclude that the trial
court properly dismissed the charge of solicitation to
commit criminal sexual conduct.

Turning next to the charge of attempted disseminat-
ing or exhibiting sexual material to a minor, we again
find the crime to be legally impossible under the facts
of this case. MCL 722.675(1); MSA 25.254(5)(1) pro-
vides as follows:

A person is guilty of distributing obscene matter to a
minor if that person does either of the following:

(a) Knowingly disseminates to a minor sexually explicit
visual or verbal material that is harmful to minors.

(b) Knowingly exhibits to a minor a sexually explicit per-
formance that is harmful to minors.

Further, MCL 722.671(c); MSA 25.254(1)(c) defines "minor" as a person under eighteen years of age.

Defendant's conduct at issue is the e-mailing of a picture of his penis to "Bekka." Thus, while defendant believed he was sending the picture to a fourteen-year-old girl named Bekka, he in fact was sending it to an adult male named Deputy Liczbinski. We believe that this, too, falls within the area of legal, rather than factual, impossibility. The e-mail was sent to its intended recipient: a person whose chat-room screen name was "Bekka." Because "Bekka" was, in fact, an adult, an essential requirement of the statute was not met: dissemination to a minor.

In fact, this case is very similar to an example of legal impossibility used by Professor Dressler. Dressler, *supra* at § 27.07[A], p 369, posed the question of two cases. In each case, the male defendant had sexual intercourse with a seventeen-year-old female in a jurisdiction where the age of consent was sixteen. Therefore, statutory rape did not occur in either case. However, the first defendant erroneously believed the girl was fifteen and, therefore, believed (erroneously) that he had committed statutory rape. The second defendant, on the other hand, knew the girl was seventeen, but erroneously believed the age of consent was eighteen, thus also incorrectly thinking that he had committed statutory rape. Thereafter, Professor Dressler points out that the second defendant is not guilty of a crime because it is not a crime to commit an act that a person erroneously believes is against the law (called "pure legal impossibility"). Dressler, *supra* at § 27.07[D][2], p 373, n 144. Professor Dressler then goes on to point out that the first

defendant also is not guilty of statutory rape under a legal impossibility analysis:

> Consider, as well, the hypothetical in subsection [A], *supra*, in which *D1* has intercourse with a female old enough to consent, although he believed that she was underage. This example involves hybrid legal impossibility: *D1* was mistaken about a fact (the girl's age); but her age is of legal significance in that sexual intercourse with a 17-year-old female (her true age) does not constitute statutory rape. [*Id.* at § 27.07[D][3][a], p 374, n 152.]

The exact same circumstance exists here: defendant was mistaken about "Bekka's" age, but Bekka's age is of legal significance in that distributing sexually explicit material to an adult does not violate the statute under which defendant was charged.[2]

Therefore, for the above reasons, we conclude that it is legally impossible to violate MCL 722.675(1); MSA 25.254(5)(1) by distributing obscene material to an adult and, therefore, it does not constitute an attempted violation of that statute to distribute obscene material to a person the defendant believes is a minor, but who is, in fact, an adult. Accordingly, the trial court properly dismissed this charge.

Finally, we turn to the most serious charge against defendant, child sexually abusive activity. MCL 750.145c; MSA 28.342a provides in pertinent part as follows:

> (1) As used in this section:
> (a) "Child" means a person who is less than 18 years of age . . . .

---

[2] Defendant was also mistaken about "Bekka's" sex, but it is not legally significant whether Bekka was a male or a female.

*     *     *

(e) "Listed sexual act" means sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity.

*     *     *

(h) "Child sexually abusive activity" means a child engaging in a listed sexual act.

*     *     *

(2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or *a person who* attempts or *prepares* or conspires *to arrange for,* produce, make, or finance *any child sexually abusive activity* or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

If the child sexually abusive activity statute merely punished actually engaging in child sexually abusive activity and, therefore, defendant was charged with attempted child sexually abusive activity, we would likely have to conclude that this again presented a case of legal impossibility. It would present the same case as distributing obscene material to a minor: the existence of a minor is legally significant and the fact that the intended recipient turned out to be an adult renders it legally impossible to have committed the crime. Similarly, it would be legally impossible to engage in child sexually abusive activity if the individ-

ual with whom the defendant intends to engage in such activity is not, in fact, a child.

However, the child sexually abusive activity statute is not so narrowly drawn. As the portion of the statute emphasized above indicates, a person may violate the statute by *preparing* for any child sexually abusive activity. It is, of course, ultimately for the jury to decide if the conduct defendant proposed to "Bekka" constituted child sexually abusive activity and whether defendant did, in fact, prepare to engage in such activity. That is, we are not called on in this case to determine whether defendant would be guilty of the charged offense if, in fact, "Bekka" had been a fourteen-year-old girl.

Our analysis assumes, without deciding, that defendant would, in fact, be guilty of child sexually abusive activity if "Bekka" had been a fourteen-year-old girl as defendant thought rather than the adult male that Deputy Liczbinski really is. The question before us is whether it makes a difference to the issue of defendant's guilt that "Bekka" is, in fact, an adult rather than a fourteen-year-old girl. We conclude that it does not.

Because the child sexually abusive activity statute requires only mere preparation, rather than actual abusive activity, we are satisfied that a situation such as the case at bar comes within the provision of the statute. Black's Law Dictionary (5th ed), pp 1063-1064, defines "preparation" as follows:

> With respect to criminal offense, consists in devising or arranging means or measures necessary for its commission, while attempt is direct movement toward commission after preparations are made.

We do not believe that it is legally significant that "Bekka" was an adult rather than a child in determining whether defendant made preparations to engage in child sexually abusive activity. It does not change the fact that defendant was endeavoring to find a child, to entice a child to engage in sexual activity, or to arrange to meet a child for sexual activity. Assuming defendant's conduct constitutes preparing to arrange for child sexually abusive activity in general terms, then defendant engaged in such conduct whether "Bekka" was a fourteen-year-old girl or an adult male. In either case, defendant was preparing to arrange for child sexually abusive activity by chatting with and enticing someone he believed to be a child. The fact that "Bekka" was not a child merely means that defendant would not ultimately be successful in engaging in child sexually abusive activity. Defendant's criminal responsibility, however, is not premised on his success, but on his preparations.

Defendant relies on the Supreme Court's decision in *Tinskey, supra.* However, we believe that defendant's reliance on *Tinskey,* at least with respect to the child sexually abusive activity charge, is misplaced. In *Tinskey,* the Court held that the defendant was not guilty of conspiracy to commit abortion where the woman on whom the abortion was to be performed was not, in fact, pregnant.[3] The Supreme Court concluded that the defendants could not be guilty because Michigan's abortion statute requires that a woman be pregnant.[4] That analysis would support our

---

[3] She was, in fact, a policewoman who was not pregnant. *People v Tinskey,* 49 Mich App 497, 499; 212 NW2d 263 (1973).

[4] "Any person who shall wilfully administer to any pregnant woman . . . ." MCL 750.14; MSA 28.204.

conclusions with respect to the CSC and obscene material charges: those statutes actually require conduct involving a minor, just as Michigan's abortion statute requires conduct involving a pregnant woman. However, *Tinskey* is inapplicable to the child sexually abusive activity statute because that statute does not actually require conduct involving a minor. Rather, it only requires that the defendant prepare to arrange for child sexually abusive activity. The statute does not require that those preparations actually proceed to the point of involving a child.[5]

For the above reasons, we conclude that defendant may be guilty of child sexually abusive activity even though "Bekka" proved to be an adult rather than a child. Accordingly, the trial court erred in dismissing that charge on the basis of the doctrine of legal impossibility.

Affirmed in part, reversed in part, and remanded to the trial court with instructions to reinstate the child sexually abusive activity count. We do not retain jurisdiction.

---

[5] We note that *Tinskey* is seemingly at odds with cases Dressler relies on in classifying an abortion on a nonpregnant woman as factual impossibility rather than legal impossibility. However, *Tinskey* points out that abortion statutes fall into two categories: those that require the woman to be pregnant and those that do not. The *Tinskey* decision is specifically premised on the fact that Michigan's abortion statute requires the involvement of a pregnant woman. Factual impossibility would apply to those cases where the applicable abortion statute does not make pregnancy an element of the offense.