PEOPLE v ASPY

Docket No. 294949. Submitted January 4, 2011, at Grand Rapids. Decided February 1, 2011. Approved for publication March 22, 2011, at 9:00 a.m.

Larry J. Aspy was convicted by a jury in the Kent Circuit Court, James Robert Redford, J., of child sexually abusive activity and using a computer to commit that offense. Defendant, an Indiana resident, had contacted what he thought was a 14-year-old girl residing in Kent County, discussed sexually explicit topics with her by means of the Internet, and eventually set up a camping weekend with her to take place in Ottawa County. In fact, defendant communicated with an adult member of a group dedicated to identifying Internet sexual predators. When defendant arrived at what he had been told was the girl's address, the police arrested him. His truck contained camping equipment as well as alcoholic beverages. Defendant appealed.

The Court of Appeals *held*:

1. Under MCL 762.2(2)(a), Michigan has territorial jurisdiction over any crime in which an act constituting an element of the crime was committed in Michigan. The trial court must initially decide whether the facts offered by the prosecution, if proved, would be legally adequate to confer jurisdiction.

2. Under MCL 750.145c(2), child sexually abusive activity does not actually require conduct involving a minor. Preparing to arrange for child sexually abusive activity is enough. Defendant drove to Kent County intending to meet and engage in unlawful behavior with a child whom he believed to be under the age of 18. This satisfied the element of preparing to arrange for child sexually abusive activity, and Michigan thus had territorial jurisdiction for defendant's prosecution.

3. With respect to the crime of using a computer to commit child sexually abusive activity, MCL 750.145d(6) provides that a violation occurs if the communication originates in Michigan, is intended to terminate in Michigan, or is intended to terminate with a person who is in Michigan. Defendant was informed that his intended victim was in Michigan and made arrangements with her to meet in Michigan for illegal purposes. Even though the commu-

nications occurred elsewhere, defendant intended them to terminate in Michigan. Thus, Michigan had territorial jurisdiction for prosecuting defendant under this charge also.

4. Defendant was not denied the effective assistance of counsel.

5. MCL 750.145c(6) allows a defendant to assert an affirmative defense if the child alleged as a victim of child sexually abusive activity is a person emancipated under MCL 722.4. An affirmative defense, however, is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it. Defendant did not concede that he knew, had reason to know, or should reasonably have been expected to know that the child was a child or that he did not take reasonable precautions to determine the child's age, which is an element of MCL 750.145c(2). He maintained instead that he communicated with an adult and was not entitled to assert the affirmative defense.

Affirmed.

MARKEY, P.J., and DONOFRIO, J., concurred.

ZAHRA, J., did not participate because he was appointed as a justice of the Supreme Court before the release of this opinion.

1. CRIMINAL LAW — TERRITORIAL JURISDICTION.

Michigan has statutory territorial jurisdiction over the prosecution of any crime in which an act constituting an element of the crime was committed within Michigan; the trial court must initially decide whether the facts offered by the prosecution, if proved, would be legally adequate to confer jurisdiction (MCL 762.2[2][a]).

2. CRIMINAL LAW — CHILD SEXUALLY ABUSIVE ACTIVITY — ELEMENTS — PREPARATION.

An individual violates MCL 750.145c(2), which concerns child sexually abusive activity and child sexually abusive material, by preparing to arrange for child sexually abusive material even if the preparations do not actually proceed to the point of involving a child.

3. CRIMINAL LAW — USE OF THE INTERNET OR COMPUTER TO COMMIT CRIMES AGAINST MINORS — ELEMENTS — COMMUNICATIONS — TERRITORIAL JURISDICTION.

MCL 750.145d prohibits the use of the Internet or a computer to communicate with any person to commit, attempt to commit, conspire to commit, or solicit the commission of various crimes against a minor; a communication violates the statute if it originates in Michigan, is intended to terminate in Michigan, or is

intended to terminate with a person who is in Michigan; Michigan has territorial jurisdiction for purposes of prosecuting a violation of the statute if the defendant intended that his or her Internet communication terminate in this state (MCL 750.145d[1], [6]; MCL 762.2).

*Bill Schuette*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Anica Letica*, Assistant Attorney General, for the people.

State Appellate Defender (by *Christopher M. Smith*) for defendant.

Before: MARKEY, P.J., and ZAHRA and DONOFRIO, JJ.

PER CURIAM. A jury convicted defendant of child sexually abusive activity, MCL 750.145c(2), and using a computer to commit that offense, MCL 750.145d(1)(a), punishable under MCL 750.145d(2)(f). The trial court sentenced him to 30 months' to 20 years' imprisonment for each conviction, to be served concurrently.

### I. BASIC FACTS

Defendant is a resident of Portland, Indiana. In a website chat room, defendant, identifying himself as "steelmanoo," began to communicate with Nancy Popham, an Ohio resident, who identified herself as "carriebear_94." Popham is a member of Perverted Justice, a group dedicated to identifying Internet "predators."[1] When defendant contacted Popham, she asked his "asl" (age, sex, and location), and defendant responded "lol [laugh out loud] 57/m[male]/Indiana." Popham responded, "lol im 14 f [female] mi [Michigan]." Defendant wrote that he had looked at the profile for carriebear_94 and that she was "cute." The profile

---

[1] Both parties employed this descriptive term in their briefs on appeal.

for carriebear_94 indicated that she was a 14-year-old girl. Although the website expressly barred persons under 18 from entering the chat room, the website did not have an age-verification program.

Defendant soon steered the discussion toward sexual activity, and for over a one-month period, defendant on a daily basis broached topics including engagement in oral sex, group sex, and bestiality. At trial, defendant maintained that he did not believe Popham was 14 and asserted that he was merely role-playing with an adult. In any event, defendant and Popham soon discussed plans to meet in person. Defendant wrote to Popham that he wanted to meet her in a public place because "there are times guys are set up to pick up young ladys and i want to have a good time up there and not end up in jail." Defendant and Popham eventually agreed to camping one weekend when Pophams's "mother" was out of town, and defendant made online reservations for a campsite near Grand Rapids. Around the time they were discussing the camping trip, Popham told defendant that she liked to drink Mike's Hard Lemonade, but "you wouldn t get that for me cauz its alcohol." Defendant responded that he would not know what any beverage was if it were in a glass.

On October 16, 2008, Popham provided defendant her "address" at which defendant could pick her up to go camping, and defendant indicated that he was leaving his home at 11:30 a.m. Popham requested another member of Perverted Justice, Valentina Cardinas, to call defendant and pose as a 14-year-old girl. Cardinas called defendant four times and spoke with him three times. During one phone call, defendant told Cardinas that he was near Grand Rapids and asked for directions. Cardinas offered to obtain a Google map and indicated that she would call him back in five minutes. Cardinas

again called defendant and he was still lost, but eventually he located the address Popham had provided. Defendant asked Cardinas if there was a red car in the driveway, and she answered that she would be right out. The police then arrested defendant at the house. During a police interview, defendant claimed that he planned to camp, fish, and have fun, not to have sex. A police search of defendant's vehicle revealed a six-pack of Mike's Hard Lemonade and a bottle of bourbon.

## II. TERRITORIAL JURISDICTION

### A. STANDARD OF REVIEW

We review de novo issues of law and statutory interpretation. *People v McCuller*, 479 Mich 672, 681; 739 NW2d 563 (2007).[2]

### B. ANALYSIS

In *People v Gayheart*, this Court noted that

> until 2002, the common-law rule in Michigan, which drew heavily on the United States Supreme Court's decision in *Strassheim* [*v Daily*, 221 US 280, 285; 31 S Ct 558; 55 L Ed 735 (1911)], was that the state could not exercise territorial jurisdiction over criminal conduct committed in another state unless that conduct was intended to have, and did in fact have, "a detrimental effect within the state." [*People v Gayheart*, 285 Mich App 202, 208; 776 NW2d 330 (2009), quoting *People v Blume*, 443 Mich 476, 477; 505 NW2d 843 (1993).]

---

[2] Also, MCL 767.45(1)(c) provides in relevant part that "[n]o verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury." There was no mention here that the offense was not committed in the court's jurisdiction, and review is likely limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

In 2002, however, the Legislature enacted MCL 762.2, which provides:

(1) A person may be prosecuted for a criminal offense he or she commits while he or she is physically located within this state or outside of this state if any of the following circumstances exist:

(a) He or she commits a criminal offense wholly or partly within this state.

(b) His or her conduct constitutes an attempt to commit a criminal offense within this state.

(c) His or her conduct constitutes a conspiracy to commit a criminal offense within this state and an act in furtherance of the conspiracy is committed within this state by the offender, or at his or her instigation, or by another member of the conspiracy.

(d) A victim of the offense or an employee or agent of a governmental unit posing as a victim resides in this state or is located in this state at the time the criminal offense is committed.

(e) The criminal offense produces substantial and detrimental effects within this state.

(2) A criminal offense is considered under subsection (1) to be committed partly within this state if any of the following apply:

(a) An act constituting an element of the criminal offense is committed within this state.

(b) The result or consequences of an act constituting an element of the criminal offense occur within this state.

(c) The criminal offense produces consequences that have a materially harmful impact upon the system of government or the community welfare of this state, or results in persons within this state being defrauded or otherwise harmed.

"The language of MCL 762.2 has broadened the scope of Michigan's territorial jurisdiction over criminal matters, significantly expanding upon the common-law

rule . . . ." *Gayheart*, 285 Mich App at 209. "Michigan now has statutory territorial jurisdiction over any crime where any act constituting an element of the crime is committed within Michigan even if there is no indication that the accused actually intended the detrimental effects of the offense to be felt in this state." *Id.* at 209-210 (quotation marks and citation omitted).

*Gayheart* also explained that, in applying MCL 762.2, the trial court must initially decide, in its role as a gatekeeper, "whether the facts to be offered by the prosecution, if proven, would be legally adequate to confer jurisdiction." *Id.* at 211. Along these lines, defendant argues on appeal that the prosecution presented insufficient record evidence to support a criminal prosecution under MCL 762.2. Defendant specifically argues that, in regard to the offenses, there was "[n]o [e]vidence of Partial Commission," "[n]o Evidence of Michigan Attempt or Conspiracy," "[n]o qualifying 'Victim,' " and "[n]o Production of Substantial and Detrimental Effects."

MCL 750.145c(2) provides, in part that

[a] person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . .

The prosecution charged defendant with attempting, preparing, or conspiring to arrange for child sexually abusive activity.

We conclude that the facts offered by the prosecution and proved to the jury were clearly adequate to confer jurisdiction. We also conclude that the prosecution

presented more than sufficient evidence to allow a rational jury to conclude that defendant prepared and attempted to commit child sexually abusive activity and that defendant used a computer and the Internet to commit this crime. With respect to a criminal offense, the word "preparation" " 'consists in devising or arranging means or measures necessary for its commission, while attempt is direct movement toward commission after preparations are made.' " *People v Thousand*, 241 Mich App 102, 115; 614 NW2d 674 (2000), rev'd in part on other grounds 465 Mich 149 (2001), quoting Black's Law Dictionary (5th ed). Defendant claims that "the only possible attempt here would have to be an attempt to commit the crime of preparing to arrange [, as] . . . those preparations and arrangements, were made in Indiana, not in Michigan." Defendant's argument is misplaced. Defendant admits that while in Indiana he used his computer to commit child sexually abusive activity. Defendant, however, fails to acknowledge he also prepared to commit child sexually abusive activity while in Michigan, not Indiana. MCL 762.2(2)(a) provides that Michigan has jurisdiction over any crime in which any act constituting an element of the crime is committed within Michigan. MCL 750.145c(2) " 'does not actually require conduct involving a minor. Rather, it only requires that the defendant prepare to arrange for child sexually abusive activity. The statute does not require that those preparations actually proceed to the point of involving a child.' " *People v Adkins*, 272 Mich App 37, 46; 724 NW2d 710 (2006), quoting *Thousand*, 241 Mich App at 117 (emphasis omitted). There is evidence that defendant acted consistently with the preparations he had made to commit child sexually abusive activity. He drove into Michigan to a location where he intended to meet a child whom he believed to be under the age of 18. There

is substantial evidence that he intended to take a girl under the age of 18 to a reserved campsite and engage in behavior wrongful under MCL 750.145c(2). Since preparation to arrange for child sexually abusive activity is an element of MCL 750.145c(2), we reject defendant's contention that Michigan lacked territorial jurisdiction for his prosecution under MCL 762.2.

With regard to defendant's conviction for violating MCL 750.145d(1)(a), defendant asserts that the evidence of territorial jurisdiction is even more lacking because preparation using the Internet is required. Defendant contends that because all of his computer activity took place in his home in Indiana, the police never recovered a laptop or smart phone from his vehicle in Michigan, and defendant engaged in no online discussions with carriebear_94 on the date he drove into Michigan, Michigan did not have territorial jurisdiction over him as it related to the charge of using the Internet to commit child sexually abusive activity. But defendant ignores MCL 750.145d(6), which provides: "A violation or attempted violation of this section occurs if the communication originates in this state, is intended to terminate in this state, or is intended to terminate with a person who is in this state."

While defendant's Internet communication originated in Indiana, not Michigan, the communication was intended to terminate in Michigan. Defendant viewed the profile information associated with the moniker "carriebear_94" indicating that she was from Michigan. During their initial chat, carriebear_94 informed defendant that she was from Michigan. During a time when defendant believed that carriebear_94's mother would be out of town, defendant informed carriebear_94 that he would come to Michigan to meet her and have fun. Defendant reserved a campsite for them in Michigan.

Defendant stocked his truck with alcohol and drove to Michigan where he then went to carriebear_94's house for the purpose of picking her up to engage in prohibited acts in Michigan, the intended result of the Internet communications. The record evidence supports the fact that although the Internet communications originated elsewhere, defendant clearly intended them to terminate in Michigan. MCL 750.145d(6). Because there is no doubt that defendant intended that his Internet communications terminate in Michigan, MCL 750.145d(6), we also reject defendant's contention that Michigan lacked territorial jurisdiction under MCL 762.2 to prosecute defendant for his violation of MCL 750.145d(1)(a).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. STANDARD OF REVIEW

There was no hearing in the trial court, and this Court's review of the issue is limited to the existing record. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). The questions presented by a claim of ineffective assistance of counsel are mixed questions of law and fact; findings of fact by the lower court are reviewed for clear error, and questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

#### B. ANALYSIS

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, (2) there is a reasonable probability that, but for counsel's error, the result of the

proceedings would have been different, and (3) the resultant proceedings were fundamentally unfair or unreliable. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

Defendant argues that his trial counsel was ineffective by failing to present to the jury the factual question whether Michigan had territorial jurisdiction. As stated in *Gayheart*, 285 Mich App at 211-212,

> assuming that the exact location of a boundary line is *not* at issue in the case, the trier of fact must next determine as a factual matter whether the alleged act, consequence, or other condition that would confer territorial jurisdiction under MCL 762.2 did in fact occur within the state of Michigan. The clear majority rule in this country is to require the trier of fact to find beyond a reasonable doubt that the alleged act, consequence, or other condition that would confer jurisdiction has in fact occurred within the territorial jurisdiction of the court when the matter is placed in issue.

Defendant supports his argument by noting that the jury, while deliberating, asked, "What constitutes a crime in this case to be tried in Kent County?" and "Why specifically is this case being tried in Kent County?" Contrary to defendant's claim, we find that only the second question relates to territorial jurisdiction.[3] The trial court stated:

---

[3] In regard to the first question, which does not address territorial jurisdiction, the trial court answered:

As to the first question, the defendant is charged with soliciting, conspiring to commit an offense under the law. Either an actual person below the age of 18 must have been involved or the defendant must have believed someone below the age of 18 was involved. To put it another way, either the person who communicated [as] Carrie Bearie 94 was under the age of 18 or the defendant believed the

The second question I answered as follows, and this will be made part of the record. "This question appears to address the issue of venue. You must be satisfied that at least some of the activity involved in each count you are considering took place in Kent County for there to be venue in Kent County. Why a case is being tried somewhere is not an element of the offense and is not something you need to consider."

The trial court asked if either counsel wished to "amplify the record," and both replied, "[n]o, your honor."

Initially we conclude that the trial court's instruction likely satisfied *Gayheart*'s requirement that the trier of fact determine whether MCL 762.2 was satisfied. The trial court expressly required that the jury "be satisfied that at least some of the activity involved in each count you are considering took place in Kent County . . . ." This instruction essentially enabled the jury to acquit defendant had it accepted defense counsel's claim at trial that no criminal activity occurred in Kent County. Thus, we are not convinced that the trial court failed to adequately instruct the jury in regard to territorial jurisdiction under MCL 762.2. Likewise, we are not convinced that there was a reasonable probability that the result of the proceeding would have been different had the jury been instructed on every circumstance allowing criminal prosecutions under MCL 762.2. As in *Gayheart*, we conclude that "sufficient evidence [was] presented at trial from which a rational jury could have found beyond a reasonable doubt that defendant committed at least one essential element" of preparing to engage in child sexually abusive activity and using a computer to do so and reversal is not required. See *Gayheart*, 285 Mich App at 219. Accordingly, defendant is not entitled to relief on the basis of his claim of ineffective assistance of counsel.

person was under the age of 18. The burden of demonstrating this, as is the case for all elements of the offenses charged on the government, must be shown beyond a reasonable doubt.

We also reject defendant's argument that venue was improper in Kent County because the "alleged 'essential acts' took place in Indiana." This argument simply reiterates defendant's territorial-jurisdiction argument. Further, defendant fails to articulate any strategic reason that the trial should have been conducted in Ottawa County rather than Kent County. "The decision whether or not to move for a change of venue constitutes a matter of trial strategy." *People v Anderson*, 112 Mich App 640, 646; 317 NW2d 205 (1981). Last, defendant has not presented or articulated any prejudice arising from the failure to conduct the trial in Ottawa County rather than Kent County. Thus, there is no evidence that the result of the proceedings would have been different. See also *People v Houthoofd*, 487 Mich 568, 593-594; 790 NW2d 315 (2010) (noting that a venue error is not a constitutional structural error, that the matter is subject to a harmless error analysis under MCL 769.26, and that MCL 600.1645 explicitly provides that no judgment shall be voided solely on the basis of improper venue). Accordingly, defendant has failed to overcome the heavy burden for establishing ineffective assistance of counsel. *Solmonson*, 261 Mich App at 663.

IV. OPPORTUNITY TO PRESENT A DEFENSE

A. STANDARD OF REVIEW

Questions of law are reviewed de novo. *Brown v Loveman*, 260 Mich App 576, 591; 680 NW2d 432 (2004).

B. ANALYSIS

"Under the Due Process Clause of the Fourteenth Amendment[4] criminal prosecutions must comport with prevailing notions of fundamental fairness. We have

---

4 US Const, Am XIV.

long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984).

Defendant argues that the trial court improperly denied his claim of an affirmative defense that the "victim" in this instant case was actually an adult. Defendant notes that in 2002 PA 629, the Legislature amended MCL 750.145c to provide an affirmative defense if the alleged child is a person who is emancipated by law under MCL 722.4. MCL 750.145c(6). Defendant specifically argues that the trial court denied him the right to present a defense when it precluded him from establishing that the alleged child-victim was actually more than one adult. We disagree.

"An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse or mitigate it . . . ." *People v Mette*, 243 Mich App 318, 328; 621 NW2d 713 (2000) (citations and quotation marks omitted). "An affirmative defense does not negate selected elements or facts of the crime." *Id.* at 329 (citations and quotation marks omitted). MCL 750.145c(2) requires that the prosecution establish that the "person knows, has reason to know, or should reasonably be expected to know that the child is a child . . . or that person has not taken reasonable precautions to determine the age of the child." MCL 750.145c(2). Defendant does not concede this element of the offense, but maintains that he was communicating with an adult. Thus, defendant is not entitled to assert an affirmative defense. *Mette*, 243 Mich App at 328-329. Further, defendant interprets MCL 750.145c(6) far too broadly. Reading MCL 750.145c in its entirety, it is clear the Legislature only intended to

provide an affirmative defense to those persons who at least believed that the alleged child they intended to engage in sexual activity was younger than 18 and emancipated. Defendant did not seek to admit evidence that the "alleged child" was under 18 years and emancipated. Rather, defendant sought to establish only that the "alleged child" was over the age of 18. Accordingly, defendant did not seek to establish the affirmative defense afforded by the Legislature under MCL 750.145c(6).

We affirm.

MARKEY, P.J., and DONOFRIO, J., concurred.

ZAHRA, J., did not participate because he was appointed to the Michigan Supreme Court, effective January 14, 2011, before the release of this opinion.