**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 27, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                        No. 116967

CHRISTOPHER THOUSAND,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We granted leave in this case to consider whether the doctrine of "impossibility" provides a defense to a charge of attempt to commit an offense prohibited by law under MCL 750.92, or to a charge of solicitation to commit a felony under MCL 750.157b. The circuit court granted defendant's motion to quash and dismissed all charges against him on the basis that it was legally impossible for him to have committed

any of the charged crimes. We conclude that the concept of impossibility, which this Court has never adopted as a defense, is not relevant to a determination whether a defendant has committed attempt under MCL 750.92, and that the circuit court therefore erred in dismissing the charge of attempted distribution of obscene material to a minor on the basis of the doctrine of legal impossibility. We additionally conclude that, although the Court of Appeals erred to the extent that it relied upon the concept of "impossibility" in dismissing the charge of solicitation of third-degree criminal sexual conduct, the charge was nevertheless properly dismissed because there is no evidence that defendant solicited any person to "*commit a felony*" or to "do or omit to do an act which if completed would *constitute a felony*" as proscribed by MCL 750.157b. Accordingly, we reverse in part and affirm in part the decision of the Court of Appeals and remand this matter to the circuit court for proceedings consistent with this opinion.

I. FACTUAL[1] AND PROCEDURAL BACKGROUND

Deputy William Liczbinski was assigned by the Wayne County Sheriff's Department to conduct an undercover

---

[1]This case has not yet been tried. Our statement of facts is derived from the preliminary examination and motion hearing transcripts and from the documentation contained in the lower court record, including computer printouts of the Internet dialogue between "Bekka" and "Mr. Auto-Mag."

2

investigation for the department's Internet Crimes Bureau. Liczbinski was instructed to pose as a minor and log onto "chat rooms" on the Internet for the purpose of identifying persons using the Internet as a means for engaging in criminal activity.

On December 8, 1998, while using the screen name "Bekka," Liczbinski was approached by defendant, who was using the screen name "Mr. Auto-Mag," in an Internet chat room. Defendant described himself as a twenty-three-year-old male from Warren, and Bekka described herself as a fourteen-year-old female from Detroit. Bekka indicated that her name was Becky Fellins, and defendant revealed that his name was Chris Thousand. During this initial conversation, defendant sent Bekka, via the Internet, a photograph of his face.

From December 9 through 16, 1998, Liczbinski, still using the screen name "Bekka," engaged in chat room conversation with defendant. During these exchanges, the conversation became sexually explicit. Defendant made repeated lewd invitations to Bekka to engage in various sexual acts, despite various indications of her young age.[2]

_____

[2]Defendant at one point asked Bekka, "Ain't I a lil [sic] old??" Upon Bekka's negative reply, defendant asked, "[Y]ou like us old guys?" Bekka explained that boys her age "act like little kids," and reiterated that she was fourteen years old. Bekka mentioned that her birthday was in 1984 and that she was in ninth grade, and defendant asked when she would be
(continued...)

3

During one of his online conversations with Bekka, after asking her whether anyone was "around there," watching her, defendant indicated that he was sending her a picture of himself. Within seconds, Liczbinski received over the Internet a photograph of male genitalia. Defendant asked Bekka whether she liked and wanted it and whether she was getting "hot" yet, and described in a graphic manner the type of sexual acts he wished to perform with her. Defendant invited Bekka to come see him at his house for the purpose of engaging in sexual activity. Bekka replied that she wanted to do so, and defendant cautioned her that they had to be careful, because he could "go to jail." Defendant asked whether Bekka looked "over sixteen," so that if his roommates were home he could lie.

The two then planned to meet at an area McDonald's restaurant at 5:00 p.m. on the following Thursday. Defendant indicated that they could go to his house, and that he would tell his brother that Bekka was seventeen. Defendant instructed Bekka to wear a "nice sexy skirt," something that he could "get [his] head into." Defendant indicated that he would be dressed in black pants and shirt and a brown suede

---

²(...continued)
fifteen. Defendant asked whether Bekka was still "pure," to which Bekka responded that she was not, but that she did not have a lot of experience and that she was nervous.

4

coat, and that he would be driving a green Duster. Bekka asked defendant to bring her a present, and indicated that she liked white teddy bears.

On Thursday, December 17, 1998, Liczbinski and other deputy sheriffs were present at the specified McDonald's restaurant when they saw defendant inside a vehicle matching the description given to Bekka by defendant. Defendant, who was wearing a brown suede jacket and black pants, got out of the vehicle and entered the restaurant. Liczbinski recognized defendant's face from the photograph that had been sent to Bekka. Defendant looked around for approximately thirty seconds before leaving the restaurant. Defendant was then taken into custody. Two white teddy bears were recovered from defendant's vehicle. Defendant's computer was subsequently seized from his home. A search of the hard drive revealed electronic logs of Internet conversations matching those printed out by Liczbinski from the Wayne County-owned computer he had used in his Internet conversations with defendant.

Following a preliminary examination, defendant was bound over for trial on charges of solicitation to commit third-degree criminal sexual conduct, MCL 750.157b(3)(a) and 750.520d(1)(a), attempted distribution of obscene material to a minor, MCL 750.92 and 722.675, and child sexually abusive

5

activity, MCL 750.145c(2).[3]

Defendant brought a motion to quash the information, arguing that, because the existence of a child victim was an element of each of the charged offenses, the evidence was legally insufficient to support the charges. The circuit court agreed and dismissed the case, holding that it was legally impossible for defendant to have committed the charged offenses. The Court of Appeals affirmed the dismissal of the charges of solicitation and attempted distribution of obscene material to a minor, but reversed the dismissal of the charge of child sexually abusive activity.[4] 241 Mich App 102 (2000).

We granted the prosecution's application for leave to appeal.[5] 463 Mich 906 (2000).

---

[3]The prosecution's motion to add a count of attempted third-degree criminal sexual conduct was denied by the district court.

Additionally, although the original information charged defendant with the *completed* offense of distribution of obscene material to a minor, the circuit court subsequently granted the prosecution's motion to amend the charge to *attempted* distribution of obscene material to a minor.

[4]The Court of Appeals concluded that, because the child sexually abusive activity statute proscribes mere *preparation* to engage in such activity, the circuit court erred in dismissing that charge on the basis of the doctrine of legal impossibility. 241 Mich App 102, 115-117; 614 NW2d 674 (2000). We denied defendant's application for leave to appeal from this portion of the Court of Appeals opinion, and this charge is not presently before us.

[5]In our order, we specifically directed the parties to
(continued...)

II.   STANDARD OF REVIEW

We must determine in this case whether the circuit court and the Court of Appeals properly applied the doctrine of "legal impossibility" in concluding that the charges against defendant of attempt and solicitation must be dismissed. The applicability of a legal doctrine is a question of law that is reviewed de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). Similarly, the issue whether "impossibility" is a cognizable defense under Michigan's attempt and solicitation statutes presents questions of statutory construction, which we review de novo. *People v Clark*, 463 Mich 459, 463, n 9; 619 NW2d 538 (2000); *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

III. ANALYSIS

A. THE "IMPOSSIBILITY" DOCTRINE

The doctrine of "impossibility" as it has been discussed in the context of inchoate crimes represents the conceptual dilemma that arises when, because of the defendant's mistake of fact or law, his actions could not possibly have resulted in the commission of the substantive crime underlying an attempt charge. Classic illustrations of the concept of

---

[5](...continued)
address (1) whether legal impossibility is a viable defense under the circumstances of this case, and (2) whether the attempt statute codified the legal impossibility defense as part of the common law of attempt.

7

impossibility include: (1) the defendant is prosecuted for attempted larceny after he tries to "pick" the victim's empty pocket[6]; (2) the defendant is prosecuted for attempted rape after he tries to have nonconsensual intercourse, but is unsuccessful because he is impotent[7]; (3) the defendant is prosecuted for attempting to receive stolen property where the property he received was not, in fact, stolen[8]; and (4) the defendant is prosecuted for attempting to hunt deer out of season after he shoots at a stuffed decoy deer.[9] In each of these examples, despite evidence of the defendant's criminal intent, he cannot be prosecuted for the *completed* offense of larceny, rape, receiving stolen property, or hunting deer out of season, because proof of at least one element of each offense cannot be derived from his objective actions. The question, then, becomes whether the defendant can be prosecuted for the *attempted* offense, and the answer is dependent upon whether he may raise the defense of "impossibility."

---

[6]See *People v Jones,* 46 Mich 441; 9 NW 486 (1881); *Commonwealth v McDonald*, 59 Mass 365 (1850); *People v Twiggs*, 223 Cal App 2d 455; 35 Cal Rptr 859 (1963).

[7]See *Waters v State*, 2 Md App 216; 234 A2d 147 (1967).

[8]See *Booth v State*, 398 P2d 863 (Okla Crim App, 1964); *People v Jaffe*, 185 NY 497; 78 NE 169 (1906).

[9]See *State v Guffey*, 262 SW2d 152 (Mo App, 1953).

Courts and legal scholars have drawn a distinction between two categories of impossibility: "factual impossibility" and "legal impossibility." It has been said that, at common law, legal impossibility is a defense to a charge of attempt, but factual impossibility is not. See American Law Institute, Model Penal Code and Commentaries (1985), comment to § 5.01, pp 307-317; Perkins & Boyce, Criminal Law (3d ed), p 632; Dressler, Understanding Criminal Law (1st ed), § 27.07[B], p 349. However, courts and scholars alike have struggled unsuccessfully over the years to articulate an accurate rule for distinguishing between the categories of "impossibility."

"Factual impossibility," which has apparently never been recognized in any American jurisdiction as a defense to a charge of attempt,[10] "exists when [the defendant's] intended end constitutes a crime but she fails to consummate it because of a factual circumstance unknown to her or beyond her control." Dressler, *supra*, § 27.07[C][1], p 350. An example of a "factual impossibility" scenario is where the defendant is prosecuted for attempted murder after pointing an unloaded gun at someone and pulling the trigger, where the defendant

---

[10]See *Commonwealth v Henley*, 504 Pa 408, 411; 474 A2d 1115 (1984); *State v Logan*, 232 Kan 646, 648; 656 P2d 777 (1983).

believed the gun was loaded.[11]

The category of "legal impossibility" is further divided into two subcategories: "pure" legal impossibility and "hybrid" legal impossibility. Although it is generally undisputed that "pure" legal impossibility will bar an attempt conviction, the concept of "hybrid legal impossibility" has proven problematic. As Professor Dressler points out, the failure of courts to distinguish between "pure" and "hybrid" legal impossibility has created confusion in this area of the law. Dressler, *supra*, § 27.07[D][1], p 351.

"*Pure legal impossibility* exists if the criminal law does not prohibit *D*'s conduct or the result that she has sought to achieve." *Id.*, § 27.07[D][2], p 352 (emphasis in original). In other words, the concept of pure legal impossibility applies when an actor engages in conduct that he believes is criminal, but is not actually prohibited by law: "There can be no conviction of criminal attempt based upon D's erroneous notion that he was committing a crime." Perkins & Boyce, *supra*, p 634. As an example, consider the case of a man who believes that the legal age of consent is sixteen years old, and who believes that a girl with whom he had consensual sexual intercourse is fifteen years old. If the law actually fixed the age of consent at fifteen, this man would not be

---

[11]See *State v Damms*, 9 Wis 2d 183; 100 NW2d 592 (1960).

10

guilty of attempted statutory rape, despite his mistaken belief that the law prohibited his conduct.  See Dressler, *supra*, § 27.07[D][2], pp 352-353, n 25.

When courts speak of "legal impossibility," they are generally referring to what is more accurately described as "hybrid" legal impossibility.

> Most claims of legal impossibility are of the hybrid variety.  *Hybrid legal impossibility* exists if *D*'s goal was illegal, but commission of the offense was impossible due to a factual mistake by her regarding the legal status of some factor relevant to her conduct.  This version of impossibility is a "hybrid" because, as the definition implies and as is clarified immediately below, D's impossibility claim includes both a legal and a factual aspect to it.

> Courts have recognized a defense of legal impossibility or have stated that it would exist if D receives unstolen property believing it was stolen; tries to pick the pocket of a stone image of a human; offers a bribe to a "juror" who is not a juror; tries to hunt deer out of season by shooting a stuffed animal; shoots a corpse believing that it is alive; or shoots at a tree stump believing that it is a human.

> Notice that each of the mistakes in these cases affected the legal status of some aspect of the defendant's conduct.  The status of property as "stolen" is necessary to commit the crime of "receiving stolen property with knowledge it is stolen"-i.e., a person legally is incapable of committing this offense if the property is not stolen.  The status of a person as a "juror" is legally necessary to commit the offense of bribing a juror.  The status of a victim as a "human being" (rather than as a corpse, tree stump, or statue) legally is necessary to commit the crime of murder or to "take and carry away the personal property *of another*."  Finally, putting a bullet into a stuffed deer can never constitute the crime of hunting out of season.

11

On the other hand, in each example of hybrid legal impossibility *D* was mistaken about a fact: whether property was stolen, whether a person was a juror, whether the victims were human or whether the victim was an animal subject to being hunted out of season. [Dressler, *supra*, § 27.07[D][3][a], pp 353-354 (emphasis in original).]

As the Court of Appeals panel in this case accurately noted, it is possible to view virtually any example of "hybrid legal impossibility" as an example of "factual impossibility":

> "*Ultimately any case of hybrid legal impossibility may reasonably be characterized as factual impossibility.* . . . [B]y skillful characterization, one can describe virtually any case of hybrid legal impossibility, which is a common law defense, as an example of factual impossibility, which is *not* a defense." [241 Mich App 106 (emphasis in original), quoting Dressler, Understanding Criminal Law (2d ed), § 27.07[D][3][a], pp 374-375.]

See also Weiss, *Scope, mistake, and impossibility: The philosophy of language and problems of mens rea*, 83 Colum L R 1029, 1029-1030 (1983) ("[b]ecause ordinary English cannot adequately distinguish among the various kinds of impossible attempts, courts and commentators have frequently misclassified certain types of cases"); *United States v Thomas*, 13 CMA 278, 283; 32 CMR 278, 283 (1962) ("[w]hat is abundantly clear . . . is that it is most difficult to classify any particular state of facts as positively coming within one of these categories to the exclusion of the other"); *State v Moretti*, 52 NJ 182, 189; 244 A2d 499 (1968)

("[o]ur examination of [authorities discussing the doctrine of impossibility] convinces us that the application of the defense of impossibility is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching substantial justice").

It is notable that "the great majority of jurisdictions have now recognized that legal and factual impossibility are 'logically indistinguishable' . . . and have abolished impossibility as a defense." *United States v Hsu*, 155 F3d 189, 199 (CA 3, 1998).[12] For example, several states have adopted statutory provisions similar to Model Penal Code § 5.01(1),[13] which provides:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> (a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or
>
> (b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or

---

[12]Apart from judicial abrogation of this doctrine, many states have done so by legislative enactment. In a 1995 law review article, California Deputy Attorney General Kyle Brodie listed twenty states that had specifically abolished the defense of impossibility by legislative enactment. Brodie, *The obviously impossible attempt: A proposed revision to the Model Penal Code*, 15 N Ill U L R 237, n 39 (1995).

[13]See, e.g., Kan Stat Ann 21, § 3301; Colo Rev Stat 18-2-101(1); New York Penal Law 110.10.

> (c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

In other jurisdictions, courts have considered the "impossibility" defense under attempt statutes that did not include language explicitly abolishing the defense. Several of these courts have simply declined to participate in the sterile academic exercise of categorizing a particular set of facts as representing "factual" or "legal" impossibility, and have instead examined solely the words of the applicable attempt statute. See *Darnell v State,* 92 Nev 680; 558 P2d 624 (1976); *State v Moretti*, 52 NJ 182, 189; 244 A2d 499 (1968); *People v Rojas*, 55 Cal 2d 252; 358 P2d 921 (1961).

### B. ATTEMPTED DISTRIBUTION OF OBSCENE MATERIAL TO A MINOR

The Court of Appeals panel in this case, after examining Professor Dressler's exposition of the doctrine of impossibility, concluded that it was legally impossible for defendant to have committed the charged offense of attempted distribution of obscene material to a minor. The panel held that, because "Bekka" was, in fact, an adult, an essential requirement of the underlying substantive offense was not met (dissemination to a minor), and therefore it was legally impossible for defendant to have committed the crime.

We begin by noting that the concept of "impossibility,"

14

in either its "factual" or "legal" variant, has never been recognized by this Court as a valid defense to a charge of attempt. In arguing that impossibility is a judicially recognized defense in Michigan, defendant relies heavily on our statement in *People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975), that

> [i]t is possible, *although we need not decide*, that defendants could not have been convicted of attempted abortion; at common law the general rule is that while factual impossibility is not a defense (*People v Jones*, 46 Mich 441; 9 NW 486 [1881])[14], legal impossibility is a defense. LaFave & Scott, Criminal Law, § 62, p 474. [Emphasis supplied.]

As is readily apparent, our statement in *Tinskey* regarding "legal impossibility" as a defense to an attempt charge is nothing more than obiter dictum. The defendants in *Tinskey* were not charged with attempt; rather, they were charged with statutory conspiracy. Moreover, we *specifically declined* in *Tinskey* to express any opinion regarding the viability of the "impossibility" defense in the context of attempts. No other Michigan Supreme Court case has referenced, much less adopted, the impossibility defense.

Finding no recognition of impossibility in our common law, we turn now to the terms of the statute. MCL 750.92

---

[14]In *Jones*, this Court, without mentioning the term "impossibility," held that a conviction of attempted larceny could stand notwithstanding that the defendant picked an empty pocket.

provides, in relevant part:

> Any person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration, or shall be intercepted or prevented in the execution of the same, when no express provision is made by law for the punishment of such attempt, shall be punished as follows:

> * * *

> 3.   If the offense so attempted to be committed is punishable by imprisonment in the state prison for a term less than 5 years, or imprisonment in the county jail or by fine, the offender convicted of such attempt shall be guilty of a misdemeanor . . . .

Under our statute, then, an "attempt" consists of (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense.  We have further explained the elements of attempt under our statute as including "an intent to do an act or to bring about certain consequences which would in law amount to a crime[15]; and . . . an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation."  *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993), quoting 2 LaFave & Scott, Substantive Criminal Law, § 6.2, p 18.

---

[15]The characterization of "attempt" as a "specific intent" crime is fully consistent with the plain meaning of the word "attempt."  See Perkins & Boyce, *supra* at 637 ("[t]he word 'attempt' means to try; it implies an effort to bring about a desired result.  Hence an attempt to commit any crime requires a specific intent to commit that particular offense").

16

In determining whether "impossibility," were we to recognize the doctrine, is a viable defense to a charge of attempt under MCL 750.92, our obligation is to examine the statute in an effort to discern and give effect to the legislative intent that may reasonably be inferred from the text of the statute itself. *People v McIntire*, 461 Mich 147, 152-153; 599 NW2d 102 (1999). "When a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to *apply* the terms of the statute to the circumstances in a particular case." *Id.* at 153 (citation omitted). Accordingly, if our Legislature has indicated its intent to criminalize certain conduct despite the actor's mistake of fact, this Court does not have the authority to create and apply a substantive defense based upon the concept of "impossibility." See *People v Glass (After Remand)*, 464 Mich 266; 627 NW2d 261 (2001).

We are unable to discern from the words of the attempt statute any legislative intent that the concept of "impossibility" provide any impediment to charging a defendant with, or convicting him of, an attempted crime, notwithstanding any factual mistake–regarding either the attendant circumstances or the legal status of some factor relevant thereto–that he may harbor. The attempt statute

17

carves out no exception for those who, possessing the requisite criminal intent to commit an offense prohibited by law and taking action toward the commission of that offense, have acted under an extrinsic misconception.

Defendant in this case is not charged with the substantive crime of distributing obscene material to a minor in violation of MCL 722.675.[16]  It is unquestioned that defendant could not be convicted of that crime, because

---

[16]At the time of the alleged offense, MCL 722.675 provided, in relevant part:

(1) A person is guilty of distributing obscene matter to a minor if that person does either of the following:

(a) Knowingly disseminates to a minor sexually explicit visual or verbal material that is harmful to minors.

* * *

(2) A person knowingly disseminates sexually explicit matter to a minor when the person knows both the nature of the matter and the status of the minor to whom the matter is disseminated.

(3) A person knows the nature of matter if the person either is aware of the character and content of the matter or recklessly disregards circumstances suggesting the character and content of the matter.

(4) A person knows the status of a minor if the person either is aware that the person to whom the dissemination is made is under 18 years of age or recklessly disregards a substantial risk that the person to whom the dissemination is made is under 18 years of age.

defendant allegedly distributed obscene material not to "a minor," but to an adult man.  Instead, defendant is charged with the distinct offense of attempt, which requires only that the prosecution prove intention to commit an offense prohibited by law, coupled with conduct toward the commission of that offense.  The notion that it would be "impossible" for the defendant to have committed the *completed* offense is simply irrelevant to the analysis.  Rather, in deciding guilt on a charge of attempt, the trier of fact must examine the unique circumstances of the particular case and determine whether the prosecution has proven that the defendant possessed the requisite specific intent and that he engaged in some act "towards the commission" of the intended offense.

Because the nonexistence of a minor victim does not give rise to a viable defense to the attempt charge in this case, the circuit court erred in dismissing this charge on the basis of "legal impossibility."

C.   Solicitation to Commit Third-Degree Criminal Sexual Conduct

1.   Analysis

Defendant was additionally charged, on the basis of his Internet conversations with "Bekka," with solicitation to commit third-degree criminal sexual conduct.  Defendant maintains that it was "legally impossible" for him to have committed this crime, because the underlying felony requires

the existence of a child under the age of sixteen.[17] The Court of Appeals panel agreed, concluding that it was legally impossible for defendant to have committed the crime because the underlying form of third-degree criminal sexual conduct charged, MCL 750.520d(1)(a), required the existence of a person under the age of sixteen. The panel further concluded that it was legally impossible for defendant to have committed the crime for the additional reason that he did not "solicit[] another person to commit a felony" as proscribed by the solicitation statute.

Our solicitation statute, MCL 750.157b, provides as follows, in relevant part:

> (1) For purposes of this section, "solicit" means to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation.

> * * *

> (3) . . . [A] person who solicits *another person to commit a felony*, or who solicits *another person to do or omit to do an act which if completed would constitute a felony*, is punishable as follows:

> (a) If the offense solicited is a felony punishable by imprisonment for life, or for 5 years or more, the person is guilty of a felony . . . . [Emphasis supplied.]

---

[17]MCL 750.520d(1) provides that "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and . . . (a) [t]hat other person is at least 13 years of age and under 16 years of age."

The Court of Appeals erred to the extent that it relied on the doctrine of "impossibility" as a ground for affirming the circuit court's dismissal of the solicitation charge. As we have explained, Michigan has never adopted the doctrine of impossibility as a defense in its traditional *attempt* context, much less in the context of *solicitation* crimes. Moreover, we are unable to locate any authority, and defendant has provided none, for the proposition that "impossibility" is a recognized defense to a charge of solicitation in other jurisdictions.[18]

Nevertheless, the solicitation charge was properly dismissed for the reason that there is no evidence that defendant in our case solicited anyone "to commit a felony" or "to do or omit to do an act which if completed would constitute a felony" as prohibited by MCL 750.157b. Pursuant to the plain statutory language, the prosecution was required to present evidence that defendant requested that *another*

---

[18]On the other hand, some courts have had occasion to specifically reject the notion that impossibility is a defense to solicitation. See, e.g., *Benson v Superior Court of Los Angeles Co*, 57 Cal 2d 240, 243-244; 368 P2d 116 (1962) ("[i]f the solicitor believes that the act can be committed 'it is immaterial that the crime urged is not possible of fulfilment at the time when the words are spoken' or becomes impossible at a later time" [citations omitted]). See also Model Penal Code § 5.04(1) (Proposed Official Draft 1985) ("[I]t is immaterial to the liability of a person who solicits or conspires with another to commit a crime that: (b) the person whom he solicits or with whom he conspires is irresponsible or has an immunity to prosecution or conviction for the commission of the crime").

21

*person* perform a criminal act.  The evidence here shows only that defendant requested that "Bekka" engage in sexual acts with him.   While the requested acts might well have constituted a crime on defendant's part, "Bekka" (or Liczbinski) would not have committed third-degree criminal sexual conduct had she (or he) done as defendant suggested. As the Court of Appeals properly concluded:

> What is lacking here is defendant's request to another person to commit a crime.  "Bekka," the fourteen-year-old online persona of Deputy Liczbinski, was not asked to commit a crime.  That is, while it would be a crime for defendant to engage in sexual intercourse with a fourteen-year-old girl, a fourteen-year-old girl is not committing a criminal offense (or at least not CSC-3) by engaging in sexual intercourse with an adult. Thus, whether we look at this case as defendant asking fourteen-year-old "Bekka" to engage in sexual intercourse with him or as defendant asking Deputy Liczbinski to engage in sexual intercourse with him, he did not ask another person to commit CSC-3. . . .
>
> For the above reasons we conclude that the trial court properly dismissed the charge of solicitation to commit criminal sexual conduct. [241 Mich App 111.]

Accordingly, while the concept of "impossibility" has no role in the analysis of this issue, we agree with the panel's conclusion that an element of the statutory offense is missing and that the solicitation charge was therefore properly dismissed.

## 2.  RESPONSE TO THE DISSENT

In his partial dissent, Justice TAYLOR opines that our

22

construction of MCL 750.157b(3) renders the second phrase of that subsection a "nullity," and that this phrase–"or who solicits another person to do or omit to do an act which if completed would constitute a felony"–should be read to encompass "situations where the solicitee could not be charged with the felony, but the solicitor could be."  Slip op, pp 3-4.  We disagree.

We first note that, pursuant to the plain language of this phrase, it is the act of *another person* that must, if completed, "constitute a felony."  We believe that the plain language of the statute does not support the interpretation our dissenting colleague gives it.

Moreover, our construction of § 157b(3) does not render the second phrase of that subsection "nugatory" or "surplusage."  Rather, it appears that the Legislature, by its use of the phrase "do or omit to do an act which if completed would constitute a felony," intended to make clear that the solicited offense does not have to be completed.

It is noteworthy that § 157b was substantially amended in 1986, following this Court's holding in *People v Rehkopf*, 422 Mich 198; 370 NW2d 296 (1985).  In *Rehkopf*, this Court examined two cases in which the defendants were charged under the former version of § 157b.  Defendant Rehkopf had asked an undercover police officer to kill her husband, and defendant

23

Snyder had asked someone to kill his brother.  In neither case did the intended murder ever occur.  This Court held that the statute was not violated where the defendants' conduct did not lead to the results the defendants urged–namely, the deaths of Rehkopf's husband or Snyder's brother.

In 1985, the statute read as follows, in pertinent part:

> Any person who incites, induces or exhorts any other person to . . . do any act which would constitute a felony . . . shall be punished in the same manner as if he had committed the offense incited, induced or exhorted.

The *Rehkopf* majority held that

> § 157b does not subject a person to criminal responsibility for utterances that do not result in the commission of the offense sought to be committed.  A person who does no more than utter words seeking the commission of an offense is subject to liability only for the common-law offense of solicitation.  [*Id*. at 205.][19]

Justice BOYLE and Chief Justice WILLIAMS dissented, opining that § 157b contained no requirement "that the solicitation result in either actual incitement or completion of the solicited offense."  *Id.* at 223.

In 1986, the Legislature rewrote § 157b.  The first clause of current subsection 157b(3) ("a person who solicits another person to commit a felony"), apart from using the term

_____

[19]This Court pointed out that "[s]olicitation remains a common-law offense in Michigan for which a maximum of five years imprisonment and a $10,000 fine may be imposed" pursuant to MCL 750.505.  422 Mich 204, n 3.

"solicits," is quite similar to the phrase "[a]ny person who incites, induces or exhorts any other person to do any act which would constitute a felony" as used in the prior version of § 157b. However, the Legislature apparently deemed it necessary–reasonably so, in light of the *Rehkopf* Court's construction of § 157b–to clarify that the solicited act need not be completed in order to satisfy the elements of the statute. Accordingly, the second clause of subsection 157b(3) provides further that the statute is violated where the defendant "solicits another person to do or omit to do an act which *if completed* would constitute a felony" (emphasis supplied). It is quite probable that the Legislature believed that the phrase "solicits another person to commit a felony" would not have reached solicitations in which the solicited act never came to fruition, and that the second clause was added for this purpose.

IV. Conclusion

This Court has never recognized the doctrine of impossibility. Moreover, we are unable to discern any legislative intent that the doctrine may be advanced as a defense to a charge of attempt under MCL 750.92. Accordingly, the circuit court erred in dismissing this charge on the basis that it was "legally impossible" for defendant to have committed the crime.

25

Furthermore, although we do not agree with the circuit court or the Court of Appeals that "legal impossibility" was properly invoked by defendant as a defense to the charge of solicitation, we nevertheless affirm the dismissal of this charge. There is no evidence that defendant solicited anyone "to commit a felony" or "to do or omit to do an act which if completed would constitute a felony."

Accordingly, we reverse in part, affirm in part, and remand this matter to the circuit court for proceedings consistent with this opinion. We do not retain jurisdiction.

CORRIGAN, C.J., and WEAVER and MARKMAN, JJ., concurred with YOUNG, J.

26

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                     No. 116967

CHRISTOPHER THOUSAND,

    Defendant-Appellee.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I respectfully disagree with the majority's conclusion that the doctrine of "legal impossibility" has never been adopted in Michigan. There is ample evidence to the contrary in the case law of the state. Because "legal impossibility" is a viable defense, I would affirm the Court of Appeals decision affirming the circuit court's dismissal of attempted distribution of obscene material to a minor. MCL 750.92, 722.675.

I would also find that legal impossibility, while a viable defense to solicitation, is inapplicable to the charge of solicitation to commit third-degree criminal sexual conduct

in this case.  MCL 750.157b(3)(a), 750.520d(1)(a).  I agree with the majority's conclusion that there is no evidence that defendant solicited anyone to commit CSC-3.  Therefore, I would affirm the Court of Appeals decision affirming the circuit court's dismissal of the solicitation charge, but on different grounds.

## I.  "LEGAL IMPOSSIBILITY" IN MICHIGAN

The majority errs in concluding that "legal impossibility" has never been adopted in Michigan.  It focuses on language in *Tinskey*[1] pertaining to "legal impossibility" as a defense to attempt, but ignores the reasoning of the decision.  Viewing the forest as well as the trees, one observes that the reasoning and the conclusion of the *Tinskey* Court prove that it accepted the doctrine of "legal impossibility."

*Tinskey* held that the defendants could not be guilty of conspiracy to commit abortion because the woman who was to be aborted was not pregnant.  *Tinskey, supra* at 109.  The Court reasoned that the Legislature, in enacting the statute, purposely required that conspiracy to abort involve a pregnant woman.  It thereby rejected prosecutions where the woman was not pregnant.  It concluded that the defendants in *Tinskey* could not be prosecuted for conspiracy to commit abortion

_____

[1]*People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975).

2

because one of the elements of the crime, a pregnant woman, could not be established.

Significantly, the *Tinskey* Court stated that "[t]he Legislature has not, as to most other offenses, so similarly indicated that impossibility is not a defense." *Id.*[2] By this language, *Tinskey* expressly recognized the existence of the "legal impossibility" defense in the common law of this state. Even though the reference to "legal impossibility" regarding the crime of attempt may be dictum, the later statement regarding the "impossibility" defense was part of the reasoning and conclusion in *Tinskey*. This Court recognized the defense, even if it did not do so expressly concerning charges for attempt or solicitation.

Moreover, Michigan common law[3] is not limited to decisions from this Court. The majority should not ignore decisions from the Court of Appeals. That Court has accepted

---

[2]I take this to mean that with respect to conspiracy to abort, as with most other statutory crimes, the Legislature has not indicated that impossibility is not a defense. Hence, it *is* a defense.

[3]Common law is "the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts recognizing, affirming, and enforcing such usages and customs . . . . In general, it is a body of law that develops and derives through judicial decisions, as distinguished from legislative enactments." Black's Law Dictionary (6th ed), p 276.

"legal impossibility" as a defense.

For example, in *People v Ng*, the Court of Appeals distinguished between "factual impossibility" and "legal impossibility" in rejecting a defendant's argument that he was not guilty of attempted murder.  156 Mich App 779, 786; 402 NW2d 500 (1986).  It found that factual impossibility is not a defense to a charge of attempted murder, but observed that legal impossibility *is* a defense, citing *Tinskey*.  Similarly, in *People v Cain*, the court distinguished between "legal impossibility" and a defense based on a claim of right.  238 Mich App 95, 117-119; 605 NW2d 28 (1999).  It implicitly read *Tinskey* as acknowledging the existence of the "legal impossibility" defense.[4] Accordingly, in this case, the Court of Appeals correctly considered "legal impossibility" a viable defense.

## II.   INTERPRETATION OF THE ATTEMPT STATUTE

Even if "legal impossibility" were not part of Michigan's common law, I would disagree with the majority's interpretation of the attempt statute.  It does not follow from the fact that the statute does not expressly incorporate

---

[4]See also *People v Genoa*, 188 Mich App 461, 464; 470 NW2d 447 (1991).  *Genoa* held that the circuit court correctly dismissed the charge of attempted possession with intent to deliver 650 grams or more of cocaine.  Judge Shepherd based the holding on the fact that it was legally impossible for the defendant to have committed the offense.

4

the concept of impossibility that the defense is inapplicable.

Examination of the language of the attempt statute leads to a reasonable inference that the Legislature did not intend to punish conduct that a mistake of legal fact renders unprohibited. The attempt statute makes illegal an ". . . attempt to *commit an offense prohibit by law . . . .*" MCL 750.92 (emphasis added). It does not make illegal an action not prohibited by law. Hence, one may conclude, the impossibility of completing the underlying crime can provide a defense to attempt.

This reasoning is supported by the fact that the attempt statute codified the common-law rule regarding the elements of attempt. See *People v Youngs*, 122 Mich 292, 293; 81 NW 114 (1899); People *v Webb*, 127 Mich 29, 31-32; 86 NW 406 (1901). At common law, "legal impossibility" is a defense to attempt. *United States v Hsu*, 155 F3d 189, 199-200 (CA 3, 1998); Dressler, Understanding Criminal Law (2d ed), § 27.07[B], p 369; 21 Am Jur 2d, Criminal Law, § 178, p 254. Absent a statute expressly abrogating "legal impossibility," this common-law rule continues to provide a viable defense. *Bandfield v Bandfield*, 117 Mich 80, 82; 75 NW 287 (1898), rev'd in part on other grounds *Hosko v Hosko*, 385 Mich 39; 187

NW2d 236 (1971).[5]

This state's attempt statute, unlike the Model Penal Code and various state statutes that follow it, does not contain language allowing for consideration of a defendant's beliefs regarding "attendant circumstances." Rather, it takes an "objective" view of criminality, focusing on whether the defendant actually came close to completing the prohibited act. 1 Robinson, Criminal Law Defenses, § 85(a), pp 423-424; § 85(b), p 426, n 22. The impossibility of completing the offense is relevant to this objective approach because impossibility obviates the state's "concern that the actor may cause or come close to causing the harm or evil that the offense seeks to prevent." *Id*. at 424.

The majority's conclusion, that it is irrelevant whether it would be impossible to have committed the completed offense, contradicts the language used in the attempt statute. If an element of the offense cannot be established, an accused cannot be found guilty of the prohibited act. The underlying offense in this case, disseminating or exhibiting sexual material to a minor, requires a minor recipient. Because the dissemination was not to a minor, it is legally impossible for

_____

[5]The *Bandfield* Court stated: "The legislature should speak in no uncertain manner when it seeks to abrogate the plain and long-established rules of the common law. Courts should not be left to construction to sustain such bold innovations." *Id*. at 82.

6

defendant to have committed the prohibited act.

This Court should affirm the Court of Appeals decision, determining that it was legally impossible for defendant to have committed the charged offense of attempted distribution of obscene material to a minor, MCL 750.92, 722.675.

### III. THE SOLICITATION STATUTE

I further disagree with the majority's conclusion that "legal impossibility" is not a recognized defense to a solicitation charge. As discussed above, the defense has been implicitly acknowledged in Michigan's case law. The majority states that no authority supports the proposition that "legal impossibility" is a defense to solicitation in other jurisdictions. However, this fact is unremarkable in light of the rarity with which the defense is invoked. Moreover, "the impossibility issue can arise in all inchoate offenses," including solicitation. Robinson, § 85(f)(2), p 436.

The language of our solicitation statute demonstrates that an illegal solicitation must concern an act that would constitute a felony if completed. The statute states, "a person who solicits another person to commit a felony, or who solicits another person to do or omit to do an act which if completed would constitute a felony, is punishable as follows . . . ." MCL 750.157b(3).

"Legal impossibility" would be a defense if the

7

defendant's goal were illegal but the offense incomplete due to the defendant's factual mistake concerning the legal status of a relevant circumstance. See Dressler, § 27.07[D][3][a], p 373 (discussing "hybrid legal impossibility"). In this case, defendant was mistaken regarding the legal status of "Bekka," whom he believed to be a female minor but who was actually a male adult.

However, defendant's factual mistake is irrelevant in analyzing the charge of solicitation to commit third-degree criminal sexual conduct. Even if he had made his request to engage in sexual intercourse to a fourteen-year-old girl, defendant, not the girl, would have violated the CSC-3 statute. Therefore, I agree with the majority that defendant did not solicit "Bekka" to commit an act that constituted a felony within the meaning of the solicitation statute.

I note that this is the same conclusion reached by the Court of Appeals. See *People v Thousand*, 241 Mich App 102, 111; 614 NW2d 674 (2000). That Court erred, however, in applying a "legal impossibility" analysis. It was not defendant's mistake regarding the minority status of "Bekka" that is significant. Rather, an element of the solicitation charge is missing. "Legal impossibility" is, therefore, irrelevant under the facts of this case. The solicitation charge was properly dismissed because the prosecution could

8

not prove all elements of the crime.

## IV. CONCLUSION

As judges, we often decide cases involving disturbing facts. However repugnant we personally find the criminal conduct charged, we must decide the issues on the basis of the law. I certainly do not wish to have child predators loose in society. However, I believe that neither the law nor society is served by allowing the end of removing them from society to excuse unjust means to accomplish it. In this case, defendant raised a legal impossibility argument that is supported by Michigan case law. The majority, in determining that legal impossibility is not a viable defense in this state, ignores that law.

In keeping with precedent and legal authority, I would affirm the Court of Appeals decision that it was legally impossible for defendant to commit the charged offense of attempted distribution of obscene material to a minor. Of course, if this view prevailed, defendant could still be prosecuted for his alleged misconduct. He is to be tried on the most serious of the charges, child sexually abusive activity, MCL 750.145c.

With regard to the solicitation charge, I disagree with the majority's conclusion that "legal impossibility" is not a defense to solicitation. However, the defense does not apply

9

under the facts of this case. Even if the facts had been as defendant believed, defendant did not solicit "Bekka" to commit CSC-3. Hence, an essential element of the solicitation charge is missing. The charge was properly dismissed for that reason, not because of the availability of the "legal impossibility" defense.

CAVANAGH, J., concurred with KELLY, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant/
    Cross-Appellee,

v                                     No. 116967

CHRISTOPHER THOUSAND,

    Defendant-Appellee/
    Cross-Appellant.
_____

TAYLOR, J. (*concurring in part and dissenting in part*).

I agree with the majority's recitation of the facts and its excellent analysis of why "hybrid legal impossibility" should not be recognized as a defense to a charge of attempt under MCL 750.92. Thus, I concur with parts I, II, III(A), and III(B) of the majority opinion.

However, I respectfully dissent from the majority's analysis of the solicitation of third-degree criminal sexual conduct (CSC 3) charge in part III(C). In my view, defendant may be charged with solicitation on the basis of the evidence that he solicited a person whom he believed to be a fourteen-year-old child to engage in an act of sexual penetration even

though a child victim of such an act of CSC 3 would not be guilty of CSC 3 for "voluntarily" engaging in the act.

My difference with the majority is in its understanding of the solicitation statute, MCL 750.157b(3). That section provides in pertinent part:

> [A] person who solicits another person to commit a felony, *or who solicits another person to do or omit to do an act which if completed would constitute a felony,* is punishable as follows:. . . . [Emphasis added.]

As to the first clause ("a person who solicits another person to commit a felony"), I agree with the majority that defendant cannot be considered to have asked "Bekka" to *commit* the felony of CSC 3 in violation of the solicitation statute because she cannot commit this felony by engaging in sex with an adult. If an adult and a child aged thirteen to fifteen engage in an act of "consensual" sexual penetration, only the adult would be committing the crime of CSC 3.[1] Thus, an adult who asks a fourteen-year-old child to engage in such an act cannot be considered to have asked the child to commit CSC 3. That is, the solicitor has not breached the first clause in

---

[1] The CSC 3 statute provides, in pertinent part, that "[a] person is guilty of [CSC 3] if the person engages in sexual penetration with another person and . . . [t]hat other person is at least 13 years of age and under 16 years of age." MCL 750.520d(1)(a). As one would expect, this language is phrased so as to impose criminal liability on an adult who engages in sexual penetration with a child aged thirteen to fifteen without imposing liability on the child victim of the crime.

2

this section.

However, regarding the disjunctive clause that follows the first clause, i.e., "or who solicits another person to do or omit to do an act which if completed would constitute a felony," this language is broader in scope than merely prohibiting a person from soliciting another person to commit a felony. I believe this language makes it unlawful to solicit another person to do an act that if the act were completed would be a felony. While this part of the statute surely is not as clear as it could be,[2] we must use statutory construction rules to give it meaning. A primary rule is that we should avoid making the second clause a nullity by giving it the same meaning as the first clause.[3] Using this tool, I conclude that the second clause means it is unlawful to solicit another person to join with the solicitor in doing an act that would constitute a felony whether the solicited party could be guilty of the felony or not.

---

[2] Perhaps the Legislature will want to consider revising the solicitation statute to employ more straightforward language in place of the phrase "to do or omit to do an act which if completed would constitute a felony."

[3] "It is a maxim of statutory construction that every word of a statute should be read in a way as to be given meaning, and a court should avoid a construction that would render any part of the statute surplusage or nugatory." *In re MCI Telecommunications Complaint,* 460 Mich 396, 414; 596 NW2d 164 (1999); see also *People v Warren,* 462 Mich 415, 429, n 24; 615 NW2d 691 (2000) (no word of a statute should be treated as surplusage or rendered nugatory).

3

This all means that the first clause requires that the solicited act would be a felony for which the solicitee could be charged. The second clause encompasses situations where the solicitee could not be charged with the felony, but the solicitor could be. This construction of the statute gives viability to both clauses of the section at issue and is, thus, in my view, not only preferable, but required.

The gist of the majority opinion, with regard to the solicitation issue, is that the second phrase, i.e., "or who solicits another person to do or omit to do an act which if completed would constitute a felony," is merely clarifying language to make clear that the Legislature did not intend to require that the solicitee actually complete the solicited felony in order for the solicitor to have violated the statute. That is, the majority states that the second clause was "intended to make clear that the solicited offense does not have to be completed." Slip op, p 23. Yet, the majority seems to acknowledge that the first clause is also violated by a solicitation to commit a felony even if the felony is never actually completed. This, then, makes the second clause a nullity. It is that outcome that disciplined readers of statutes should avoid.

Also, the majority indicates that my interpretation is contrary to the plain language of the statute because "it is

4

the act of 'another person' that must, if completed, 'constitute a felony.'" Slip op, p 23. I disagree because the majority's view on this point fails to give meaning to the words "if completed." If, as the majority argues, the conduct of the solicitee in itself must constitute a felony, then the language of the second phrase has no different meaning than if it simply referred to "an act which ... would constitute a felony." The reason is that, if the statutory language read "or who solicits another person to do or omit to do an act which would constitute a felony," then it might well be argued that the solicited person's contemplated "act," standing alone, must constitute a felony for the statute to be violated. However, the "if completed" language allows for the imposition of liability where completion of the solicited act by another person would necessarily constitute a felony.

I agree with the majority that the current language of the solicitation statute, MCL 750.157b, seems to be in large measure a reaction to this Court's interpretation of the preceding statutory language at issue in *People v Rehkopf,* 422 Mich 198; 370 NW2d 296 (1985). However, that means only that the Legislature intended to include circumstances in which the solicited felony is never actually committed within the scope of the solicitation statute. Indeed, the language of the first clause proscribing a person from merely asking another

5

person "to commit a felony" suffices, by its plain and unambiguous meaning, to accomplish that goal. That does not mean, however, that the Legislature might not have wanted to cover more situations inasmuch as it was acting to broaden the scope of the statute. Accordingly, the discussion of *Rehkopf* does not alter my view that, in keeping with the canon of construction against rendering statutory language nugatory or surplusage, the second clause must be taken as encompassing more than the first clause, standing alone, does.

Turning to the circumstances of the present case, there was evidence that defendant solicited "Bekka," believing "her" to be a fourteen-year-old child, to engage in an act of sexual penetration with him. In other words, defendant solicited "Bekka" to engage with him in an act of sexual penetration between an adult and a fourteen-year-old child. Thus, defendant solicited "Bekka" to do an act that, "if completed" by the participation of defendant, would constitute the felony of CSC 3 on defendant's part. Accordingly, I conclude that such a solicitation falls within the range of conduct in the solicitation statute's prohibition of soliciting another person "to do . . . an act which if completed would constitute a felony." MCL 750.157b(3).

Of course, I recognize that because "Bekka" was actually Deputy William Liczbinski, an adult, the solicited person

6

could not actually have committed the act envisioned by defendant. However, that is immaterial. There is nothing in the language of the pertinent part of the solicitation statute, MCL 750.157b(3), that requires that it be possible for the solicited person to carry out the conduct that is solicited in order for the statute to be violated. Thus, consistent with the majority opinion's rejection of the "legal impossibility" defense, I conclude that it is immaterial that the deputy could not have carried out the solicited act.

Accordingly, I agree with the majority's treatment of the attempted distribution of obscene material to a minor charge. However, I would also reverse the Court of Appeals with regard to the solicitation of CSC 3 charge, and would remand to the circuit court for trial on that charge.

7