PEOPLE v DISIMONE

Docket No. 234436. Submitted December 5, 2001, at Grand Rapids. Decided June 11, 2002, at 9:00 A.M. Leave to appeal sought.

Donald J. Disimone was charged in the Grand Traverse Circuit Court with violating MCL 168.932a(e), which makes it a felony to offer to vote or attempt to vote more than once at the same election either in the same or in another voting precinct. The defendant moved that the jury be instructed that the prosecution must prove his specific intent to violate the statute in order to obtain a conviction. The prosecution conceded that an attempt to vote, but not an offer to vote, more than once at the same election is a specific intent crime. The court, Thomas G. Power, J., granted the defendant's motion. The prosecution appealed by leave granted.

The Court of Appeals *held*:

Specific intent is a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself. Words typically found in specific intent statutes include "knowingly," "wilfully," "purposely," and "intentionally." In this case, the trial court erred in ruling that offering to vote more than once at the same election is a specific intent crime. MCL 168.932a(e), as it relates to offering to vote more than once, does not suggest a legislative design to require the prosecution to prove that the offender had an intent to cause a particular result or a desire that a specific consequence occur as the result of the performance of the prohibited act, or that the offender had a particular criminal intent beyond the act done.

Reversed in part and remanded for further proceedings.

CRIMINAL LAW — OFFERING TO VOTE MORE THAN ONCE AT SAME ELECTION — GENERAL INTENT.

The offense of offering to vote more than once at the same election either in the same or in another voting precinct is a general intent crime (MCL 168.932a[e]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dennis LaBelle*, Pros-

ecuting Attorney, and *Robert A. Cooney*, Assistant Prosecuting Attorney, for the people.

*Rizzo & Associates, PLC* (by *John J. Rizzo, III*), for the defendant.

Before: WILDER, P.J., and GRIFFIN and SMOLENSKI, JJ.

WILDER, P.J. The prosecution appeals by leave granted[1] from the April 27, 2001, circuit court holding that a conviction under MCL 168.932a(e) requires the prosecutor to prove that defendant had a specific criminal intent rather than a general intent. We reverse in part and remand for further proceedings.

### I. FACTS AND PROCEEDINGS

This case involves defendant's voting activity in the November 7, 2000, general election. On that date, defendant went to a voting precinct in Grant Township and presented to the election workers what appeared to be a valid voter registration card that listed him as a Grant Township resident entitled to vote at that location. Defendant's name, however, did not appear on the Grant Township voter registration ledger. Consistent with procedure, one of the election workers, Sue Svec, attempted to contact the township clerk but was unable to immediately reach her after several calls. Accordingly, because his voter registration card showed him to be a Grant Township resident, the Grant Township election workers permitted defendant to vote.[2] Before he was permitted to vote,

---

[1] *People v Disimone*, unpublished order of the Court of Appeals, entered June 20, 2001 (Docket No. 234436).

[2] Grant Township records establish that defendant actually voted at that location.

defendant made a comment to the effect that he could vote at his other voting place. Ms. Svec heard this comment and told him that he "better not." Later, the Grant Township Clerk called the voting precinct and informed Ms. Svec that defendant was not then registered to vote in Grant Township. Ms Svec then contacted Colfax Township to advise election officials there that defendant had voted in Grant Township and that he should not be permitted to vote in Colfax Township.

. At another time during the day of November 7, 2000, defendant also voted at the voting precinct in Colfax Township.[3] According to the testimony of Cynthia Clark, elections chairperson for Colfax Township, sometime after defendant arrived at the Colfax Township voting precinct he expressed confusion about where he was supposed to vote. Ms. Clark checked the voter registration file box for information on defendant. The box contained several records in defendant's name, including the usual card generated and maintained by Colfax Township elections officials to record when a registered voter actually votes in an election, as well as a new registration card that had been sent to the Colfax Township Clerk.[4] In addition, defendant was listed in the Qualified Voter File[5] as a Colfax Township resident. On the basis of this infor-

---

[3] The record suggests, but is not clear, that defendant cast his vote in Colfax Township after he had voted in Grant Township. It is also not clear from the record whether defendant had already voted in Colfax Township before Ms. Svec contacted election officials in Colfax Township to advise them that defendant had voted in Grant Township.

[4] While the testimony does not specify who sent this card to the township clerk, presumably, this registration card was generated by the Secretary of State.

[5] See MCL 168.509r.

mation, Ms. Clark told defendant that he was eligible to vote in Colfax Township and defendant proceeded to vote at the Colfax Township voting precinct. After he had voted, defendant asked Ms. Clark whether he was permitted to go to Grant Township to vote and she told him he was not.

Defendant was charged with violating MCL 168.932a(e), which provides in relevant part: "A person shall not offer to vote or attempt to vote more than once at the same election either in the same or in another voting precinct. A person shall not give 2 or more votes folded together."

Following a preliminary examination, the district court found there was probable cause to believe that defendant had violated MCL 168.932a(e), and bound defendant over for trial. In the circuit court, defendant asserted that MCL 168.932a(e) should be construed to require the prosecutor to prove that defendant had a specific criminal intent, and filed a motion to have the jury instructed accordingly. The prosecution conceded that an "attempt to vote" under the statute would constitute a specific intent crime, but challenged the defendant's assertion that an "offer to vote" within the meaning of the act was a specific intent crime. Following a hearing, the circuit court granted defendant's motion. The circuit court first found that defendant could not be convicted under the act unless the evidence established that defendant intended to have two votes counted, and then ruled that the jury would be instructed that they must find defendant had a specific criminal intent in order to convict the defendant.

The prosecution filed this interlocutory appeal, and we granted leave to consider the question whether

MCL 168.932a(e) requires proof of specific or general intent.

## II. STANDARD OF REVIEW

To resolve the dispute in this case, we are called on to interpret statutory language. Statutory interpretation is a question of law that we review de novo. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 469; 628 NW2d 577 (2001), citing *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998). As *People v Schultz*, 246 Mich App 695, 702-703; 635 NW2d 491 (2001), quoting *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999), observed:

> "The rules of statutory construction are well established. The fundamental task of statutory construction is to discover and give effect to the intent of the Legislature. The task of discerning our Legislature's intent begins by examining the language of the statute itself. Where the language of the statute is unambiguous, the plain meaning reflects the Legislature's intent and this Court applies the statute as written. Judicial construction under such circumstances is not permitted." [Citations omitted.]

"Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001), citing *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).

Unless defined in the statute, every word or phrase of the statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used, *Phillips v Jordan*, 241 Mich App 17, 22, n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). This Court may consult dictionaries in order to discern the plain and ordinary meaning of terms not defined in the statute. *Schultz, supra* at 703, citing *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001). Further, the language must be applied as written, *Camden v Kaufman*, 240 Mich App 389, 394; 613 NW2d 335 (2000), giving meaning to every word and ensuring, if at all possible, that no word be treated as surplusage or rendered nugatory, *People v Fosnaugh*, 248 Mich App 444, 451; 639 NW2d 587 (2001), and nothing should be read into a statute that is not within the manifest intent of the Legislature as evidenced from the act itself. *In re S R, supra* at 314.

### III. ANALYSIS

In *People v Davenport*, 230 Mich App 577, 578; 583 NW2d 919 (1998), this Court interpreted the language in MCL 750.529a(1) and found that the crime of carjacking was not a specific intent crime. In so holding, we observed the following:

> Specific intent is defined as a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself. *People v Lardie*, 452 Mich 231, 240; 551 NW2d 656 (1996). To determine if a criminal statute requires specific intent, this Court looks to the mental state set forth in the statute. *People v American Medical Centers of Michigan, Ltd*, 118 Mich App 135, 153;

324 NW2d 782 (1982). . . . Words typically found in specific
intent statutes include "knowingly," "willfully," "purposely,"
and "intentionally." *Id.*, *People v Norman*, 176 Mich
App 271, 275; 438 NW2d 895 (1989). *These words are absent
from the carjacking statute.* [*Davenport, supra* at 579-580
(emphasis added).]

Similarly, in *People v Henry*, 239 Mich App 140,
144-145; 607 NW2d 767 (1999), this Court, in holding
that the crime of discharging a firearm in an occupied
building is a general intent crime, observed:

" '[T]he most common usage of "specific intent" is to des-
ignate a special mental element which is required above
and beyond any mental state required with respect to the
*actus reus* of the crime.' " *People v Lagworthy*, 416 Mich
630, 639, n 9; 331 NW2d 171 (1982), quoting LaFave & Scott,
Criminal Law, § 28, p 202. . . .

\*   \*   \*

Here, because the statute does not require proof of the
intent to cause a particular result or the intent that a spe-
cific consequence occur as a result of the performance of
the prohibited act, but only requires proof that defendant
intentionally discharged the firearm, the trial court cor-
rectly concluded that the crime of discharge of a firearm in
an occupied structure is a general intent crime.

This distinction between general intent crimes and
specific intent crimes is also succinctly described in
*People v Herndon*, 246 Mich App 371, 385; 633 NW2d
376 (2001), as follows: "A statute that requires a pros-
ecutor to prove that the defendant intended to per-
form the criminal act creates a general intent crime.
A statute that requires proof that the defendant had a
'particular criminal intent beyond the act done' cre-
ates a specific intent crime." Applying these rules of
construction to the statute at issue in this case, we

conclude that the trial court erred in finding that the prosecutor was required to prove defendant had a specific criminal intent in order to convict defendant of making an "offer to vote . . . more than once at the same election either in the same or in another voting precinct" in violation of subsection 932a(e).[6] We first note that the Legislature refrained from using the words "knowingly," "wilfully," "purposefully" or "intentionally" in reference to the phrase "offer to vote," words typically found in specific intent statutes. *Davenport, supra.* In addition, the phrase "offer to vote" does not suggest a legislative design to require the prosecutor to prove defendant had an intent to cause a particular result or a desire that a specific consequence occur as the result of the performance of the prohibited act, *Henry, supra,* or that defendant had a particular criminal intent beyond the act done. *Herndon, supra.*

We reject defendant's contention that the phrases "offer to vote" and "attempt to vote" should be construed as synonymous terms, requiring the conclusion that an "offer to vote" under the statute is a specific intent crime because an "attempt to vote" is a specific intent crime. The rules of statutory construction require that every word in the statute be given its plain and ordinary meaning, ensuring if at all possible that no word be treated as surplusage or rendered nugatory. *Fosnaugh, supra. Random House Webster's College Dictionary* (1995), p 88 defines "attempt" as

---

[6] As noted above, the prosecutor concedes that in order to prove an "attempt to vote" under the statute, the evidence must establish a specific criminal intent, and the circuit court correctly so held. See *People v Thousand,* 465 Mich 149, 164, n 15; 631 NW2d 694 (2001); *People v Strand,* 213 Mich App 100, 103; 539 NW2d 739 (1995).

"1. to make an effort at; try; undertake," and "4. an effort made to accomplish something." See also *People v Thousand*, 465 Mich 149, 164, n 15; 631 NW2d 694 (2001), citing Perkins & Boyce, Criminal Law (3d ed), p 637 ("[t]he word 'attempt' means to try; it implies an effort to bring about a desired result"). In contrast, "offer" is primarily defined as "1. to present for acceptance or rejection. . . . 2. to propose or put forward for consideration. . . . 3. to show willingness (to do something). . . . 4. to give, make, or promise." Likewise, *Random House Roget's College Thesaurus* (2000) does not define "attempt" or "offer" as synonyms of each other. *Id.* at 51, 498. Thus, giving the words "attempt" and "offer" their plain and ordinary meanings, defendant's assertion that the phrases "attempt to vote" and "offer to vote" are synonymous fails for lack of any support. See also *Fosnaugh*, *supra* at 455 (when words with similar meanings are used in the same statute, it is presumed that the Legislature intended to distinguish between the terms).

IV. CONCLUSION

In proving that defendant made an "offer to vote" within the meaning of MCL 168.932a(e), the prosecutor is not required to establish that defendant had a specific criminal intent. Because the circuit court construed this provision of subsection 932a(e) as requiring proof of a specific criminal intent, we reverse the order of the circuit court in part and remand for trial. We do not retain jurisdiction.